YVONNE DuMONT *vs.* DALE M. GODBEY, executrix.

Worcester. November 3, 1980. — January 6, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Divorce,* Alimony, Division of property. *Survival of Action.*

An action by a plaintiff against her former husband for a division of property pursuant to G. L. c. 208, § 34, did not abate on the defendant's death where the divorce decree incorporated an agreement for alimony that may have survived the defendant's death. [235-240]

CIVIL ACTION commenced in the Probate Court for the county of Worcester on March 30, 1978.

Following a suggestion of death, a motion to dismiss was allowed by *Conlin,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Carl K. King* for the plaintiff.

*Frank S. Puccio, Jr.,* for the defendant.

BRAUCHER, J. The plaintiff, after divorce, sued her former husband for a division of property pursuant to G. L. c. 208, § 34. The defendant died during an adjournment in the trial, his executrix was substituted as defendant, and the action was dismissed on the ground that it had abated on the defendant's death. The plaintiff appealed, and we granted her application for direct appellate review. We hold that in the circumstances of this case, where the divorce decree incorporated an agreement for alimony that may have survived the defendant's death, the action did not abate. We therefore reverse the order dismissing the action.

The following are agreed facts. The parties were married in 1958, and two children were born of the marriage in 1959 and 1964. The wife commenced divorce proceedings

in 1973, and a decree nisi was entered in February, 1974, incorporating a stipulation of the parties as to alimony and other matters. In 1977 and early 1978 the former wife filed a complaint for contempt, a complaint for modification, and a complaint for alimony and assignment of property, and the former husband filed answers and a counterclaim. Trial began October 20, 1978; the plaintiff testified on direct, cross and redirect examination, the defendant began his testimony, and on December 7, 1978, during an adjournment of the trial, the defendant died. The bond of his then wife as executrix was approved on March 1, 1979, and the plaintiff on November 16, 1979, filed a motion to amend the complaint for alimony and substitute the executrix as defendant. The motion was allowed, but on January 8, 1980, an order was entered allowing the defendant's motion to dismiss.

1. *Alimony before 1974.* Before its amendment by St. 1974, c. 565, G. L. c. 208, § 34,[1] authorized an award of specific property by way of alimony. *Klar* v. *Klar,* 322 Mass. 59, 60 (1947). But the allowance was solely for the purpose of support and not for the purpose of a division of property. *Coe* v. *Coe,* 313 Mass. 232, 235 (1943), and cases cited. Early decisions held that liability for alimony ceased with the death of the libellee. *Stone* v. *Duffy,* 219 Mass. 178, 182 (1914). *Knapp* v. *Knapp,* 134 Mass. 353, 355 (1883). In those cases, however, the decrees were silent on the subject. See *Southard* v. *Southard,* 262 Mass. 278, 280 (1928). It was later established that a decree could require that alimony extend beyond the lifetime of the party required to make payments. See *Surabian* v. *Surabian,* 362 Mass. 342, 348 (1972), and cases cited.

Where no alimony was ordered during the life of the former husband, we held that the former wife had no claim for support against his estate. *Gediman* v. *Cameron,* 306 Mass.

---

[1] General Laws (Ter. Ed.) c. 208, § 34 (1932): "Upon a divorce, or upon petition at any time after a divorce, the court may decree alimony to the wife, or a part of her estate, in the nature of alimony, to the husband."

138, 141 (1940). *Cameron* v. *Cameron*, 307 Mass. 609 (1940). Where alimony had been ordered and the liability ceased on the death of the former husband, however, his executor or administrator could be held for accrued arrears. *Stone* v. *Duffy*, 219 Mass. 178, 182 (1914). The court in its discretion could modify the amount to be enforced. G. L. c. 208, § 37. *Brown* v. *Greenlow*, 330 Mass. 88, 89-90 (1953), and cases cited. Similar discretion would seem to exist if the court had ordered alimony continuing after the death of the party required to make payments. See *Welsh* v. *Welsh*, 346 Mich. 292, 295 (1956); *Leclerc* v. *Leclerc*, 85 N.H. 121, 123 (1931); *In re Estate of Hereford*,     W. Va.     ,     (1978) (250 S.E.2d 45, 51 [W. Va. 1978]). But if the parties have made an agreement that survives the entry of the divorce judgment, the agreement in some circumstances may be specifically enforced as a bar to modification. See *Knox* v. *Remick*, 371 Mass. 433, 435-437 (1976).

2. *Related rules.* We take account of the legal setting. If a decedent leaves a surviving spouse and issue, the spouse takes one-half of both real and personal property not disposed of by will. G. L. c. 190, § 1. Theoretically the surviving spouse could instead claim dower under G. L. c. 189, § 1, but the dower interest would in most cases be less valuable. If there is a will, the surviving spouse can waive its provisions and claim instead one-third of both real and personal property. G. L. c. 191, § 15. A judgment that the decedent had been deserted or was living apart for justifiable cause bars the claim of the surviving spouse to take against a will. G. L. c. 209, §§ 35, 36. Divorce, but not separation, revokes will provisions for the former spouse unless the will expressly provides otherwise. G. L. c. 191, § 9.

Probate Courts have plenary equity jurisdiction in controversies over property between husband and wife in divorce or separate support proceedings or between divorced persons. G. L. c. 208, § 33. G. L. c. 209, § 33. G. L. c. 215, § 6. *Wood* v. *Wood*, 369 Mass. 665, 670-671 (1976). We have given effect to acts of a spouse in connection with a

divorce designed to avoid inheritance of his property by the other spouse. See, e.g., *Blanchette* v. *Blanchette,* 362 Mass. 518, 522-523 (1972). But where a divorce is imminent, a spouse may be a "creditor" under the Uniform Fraudulent Conveyance Act, G. L. c. 109A, § 1, entitled to complain of conveyances designed to frustrate the right to alimony or assignment of property. *Jorden* v. *Ball,* 357 Mass. 468, 470-471 (1970). *Tsomides* v. *Tsomides,* 3 Mass. App. Ct. 750 (1975).

3. *Assignment of property since 1974.* After its amendment in 1974, G. L. c. 208, § 34,[2] provided: "In addition to or in lieu of an order to pay alimony, the court may assign to either the husband or wife all or any part of the estate of the other." The statute enumerates the factors to be considered, in language substantially similar to that in the Uniform Marriage and Divorce Act § 307, Alternative A, as amended in 1973, 9A U.L.A. 142 (Master ed. 1979). See Inker, Walsh & Perocchi, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U.L. Rev. 1, 3-6 (1975), stating that "the wife should be entitled to an equitable share of marital assets when the marital partnership is dissolved by divorce." *Id.* at 4. We have accepted the argument that the statute empowers the courts "to deal broadly with property and its equitable division in ways not previously authorized." *Bianco* v. *Bianco,* 371

---

[2] As amended through St. 1977, c. 467: "Upon divorce or upon motion in an action brought at any time after a divorce, the court may make a judgement for either of the parties to pay alimony to the other. In addition to or in lieu of a judgement to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other. In determining the amount of alimony, if any, to be paid, or in fixing the nature and value of the property, if any, to be so assigned, the court, after hearing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit."

Mass. 420, 422 (1976). See *Rice* v. *Rice,* 372 Mass. 398, 401 (1977); *King* v. *King,* 373 Mass. 37, 39 (1977); *Putnam* v. *Putnam,* 5 Mass. App. Ct. 10, 13-17 (1977). The provision for modification of alimony judgments, G. L. c. 208, § 37, has not been made applicable to modification of assignments of property.

The defendant points out that the statutory language in § 34 "at any time after a divorce" now applies equally to actions for alimony and for assignment of property, and that the same list of factors to be considered is prescribed for assignment of property as for alimony. See note 2, *supra.* She relies on our decision that an action for alimony cannot be maintained after the death of either spouse, that the right to alimony is purely statutory, and that the statute contemplates living parties. See *Gediman* v. *Cameron,* 306 Mass. 138, 141 (1940). The same rule, she asserts, now applies to the assignment of property introduced by the 1974 amendment.

The plaintiff, on the other hand, argues that the dissolution of the "marital partnership" gives rise to a right in the nature of a right of property, analogous to the right arising on dissolution of an ordinary partnership. See *Maze* v. *Mihalovich,* 7 Mass. App. Ct. 323, 325 (1979). When a plaintiff seeks equitable relief founded on such a right, she says, "he needs no statute to cause that right and a suit founded on it to survive the death of the other contracting party." *Metropolitan Life Ins. Co.* v. *DeNicola,* 317 Mass. 416, 419-420 (1944).

We are persuaded that G. L. c. 208, § 34, does not prescribe a different rule for the survival of an action for assignment of property from the rule for survival of an action for alimony. Decisions in other States are divided on the question whether the right to alimony continues after the death of the party required to pay. See H.H. Clark, Domestic Relations § 14.9, at 461-463 (1968). We have recently had occasion to consider rules as to survival of actions, and have found the reasons for nonsurvival lacking in current force. See *Harrison* v. *Loyal Protective Life Ins.*

*Co.,* 379 Mass. 212, 216-217 (1979) (intentional infliction of emotional distress); *McStowe* v. *Bornstein,* 377 Mass. 804, 808-809 (1979) (attorney malpractice). The 1974 reform provides an appropriate occasion for reconsideration of the rule as to alimony. But the present case, as will appear, does not require us to rule broadly on questions of survival.

The 1974 amendment to G. L. c. 208, § 34, has been criticized because it provides no time limit. See J.F. Lombard, Family Law § 2054 (Supp. 1979). Extension of liability beyond the death of the party required to make payments or assignments extends the period of uncertainty. But time limits are provided by G. L. c. 197, § 9, allowing at least nine months for the commencement of an action after the executor or administrator gives bond.

4. *The present case.* The decree nisi in the present case incorporated a "stipulation" of the parties. Among other things the stipulation provided that the husband should pay the wife $150 a week alimony "for the Wife's support alone; payable until both children reach the age of 23, thereafter the amount of alimony to be fixed by the Court or agreed between the parties. . . . In the event of the Wife's remarriage, all alimony payments for her sole support shall cease forthwith; but in any event, the child support payments shall continue until each child becomes emancipated, that is to say, until he or she attains the age of twenty-three (23) years, dies, graduates from college or becomes permanently self-supporting, whichever first occurs." By a separate provision the husband agreed "to maintain in force, life insurance policies on his life in the total amount of $200,000" and further "to constitute and maintain the wife and children as beneficiaries under such policies, but in the event of the wife's remarriage, the husband shall be permitted to exclude her as a beneficiary."

The children have not reached the age of twenty-three, and it is not suggested that the wife has remarried. No question of interpretation of the decree or stipulation has been argued to us, but it seems clear that the child support payments were not to cease on the husband's death, and our

cases strongly suggest that the alimony payments were also to continue. *Taylor* v. *Gowetz,* 339 Mass. 294, 299 (1959). *Farrington* v. *Boston Safe Deposit & Trust Co.,* 280 Mass. 121, 127 (1932). Thus the Probate Court could properly determine what, if any, payments were due after the death of the husband, and could modify its decree not only as to the future, but also as to arrears. *Manes* v. *Manes,* 370 Mass. 235, 237 (1976). Where no judgment for the assignment of property to the wife had been entered previously, we think the question whether such an assignment should be ordered was a question relative to alimony within the scope of G. L. c. 208, § 37. The action did not abate on the husband's death.

We do not decide whether we would now follow *Gediman* v. *Cameron,* 306 Mass. 138, 141 (1940), in a case where no alimony had ever been ordered. See *Seibly* v. *Circuit Judge,* 105 Mich. 584, 586-587 (1895) (upholding an award of alimony in such a case). We decide no question as to the interpretation or effect of the decree nisi or the stipulation, except that we hold that the Probate Court had jurisdiction to determine such questions. Nor do we decide what, if any, modification would be appropriate or whether any assignment of property should be ordered.

5. *Disposition.* The order appealed from is reversed, and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*