SANDRA ANN CLARK vs. KENNETH R. BARBA,
administrator.[1]

No. 93-P-979.

Hampden. April 20, 1994. - September 23, 1994.

Present: DREBEN, KAPLAN, & LAURENCE, JJ.

*Divorce and Separation,* Child support, Death of party, Modification of
judgment. *Survival of Action.*

Discussion of Massachusetts cases considering the survival of claims for
child support or alimony after the death of the party who was required
to make payments and discussion of recent State and Federal legislative
enactments governing parental obligations for child support. [324-329]
In the circumstances of a divorce proceeding in which, subsequent to the
divorce judgment, a "temporary judgment of modification" transferred
physical custody of the three minor children from their father to their
mother but no change was made in the order requiring the mother to
pay $30 a week support, and the father died intestate two months later,
a judge of the Probate Court had jurisdiction to act on the mother's
subsequent complaint for modification seeking to have assets from the
father's estate be made available for child support. [329-331]

COMPLAINT for divorce filed in the Hampden Division of
the Probate and Family Court Department on August 22,
1989.

A complaint for modification and a motion to reopen the
divorce judgment, filed on March 31, 1993, were heard by
*David G. Sacks,* J.

*Stephen Ferrarone* for the plaintiff.
*Kenneth R. Barba* for the defendant.

DREBEN, J. Subsequent to a divorce judgment, a "tempo-
rary judgment of modification" transferred physical custody
of the parties' three minor children from their father to their
mother. The father died two months later. No change in the

---

[1]Of the estate of Arthur J. Clark.

child support order was made prior to the father's death. The question presented in this appeal is whether the probate judge, in these circumstances, could modify the child support provisions of the judgment of divorce after the death of the father. A judge of the Probate Court thought he could not and denied the mother's complaint for modification.[2] While older cases, primarily *Gediman* v. *Cameron*, 306 Mass. 138, 141 (1940), concluded that the then current statutes did not justify orders made after the death of a parent, legislative developments since that time, among them the expansion of the obligations of child support and the explicit expression that it is legislative policy that children be maintained as completely as possible from the resources of their parents and not those of government, suggest that the statutory interpretation of *Gediman* be reconsidered. See *DuMont* v. *Godbey*, 382 Mass. 234, 239 (1981).

We first recount the proceedings relative to custody and support. A judgment of divorce nisi, which became absolute on February 21, 1991, provided for joint custody of the parties' three minor children, but awarded physical custody to the father. The mother was required to pay child support of thirty dollars a week.[3] On February 10, 1992, a "temporary judgment of modification" was entered, providing that the "sole legal and physical custody" of the minor children was awarded to the Department of Social Services; the Department was authorized to place the children with the father; the father was prohibited from consuming any alcoholic beverages; and the matter was made subject to review by the court after the Department completed its assessment. The provisions were ordered "all until the further order of the Court."

---

[2]The judge made no findings, but the transcript of the hearing on the mother's motion for modification indicates the judge considered that the action abated with the father's death and that he had no jurisdiction to grant the motion.

[3]The judgment nisi also divided the marital assets and stated that neither party was entitled to alimony. Further orders concerning the property division were entered in April, May and September, 1991.

On May 4, 1992, a second "temporary judgment of modification," again to be effective "until further order of the court," authorized the Department to place the minor children in the physical custody of the mother and gave the father visitation rights.

On July 10, 1992, the father died.[4] Thereafter, on August 21, 1992, the Department moved that the order granting legal custody to it be revoked as the Department "believes that [the mother] is providing adequate care for the children and should be granted full custody of her children."

The docket of the divorce proceedings does not indicate any action on the motion or any additional modification judgment, but the record on appeal contains a decree, dated October 13, 1992, under another docket number, appointing the mother guardian of her minor children.[5] On October 30, 1992, the lawyer who had represented the father in the divorce proceedings was appointed administrator of the father's estate.

On March 31, 1993, the mother filed a motion for modification and for reopening the divorce judgment. She sought an order permitting the father's assets (a parcel of real estate) to be made available for child support.[6] The administrator opposed the motion claiming that the action had abated with the father's death and that the court had no jurisdiction to modify the judgment. As indicated earlier, the mother's motion was denied.

To support his argument that any claim for child support abated on the father's death, the father's administrator relies on *Gediman* v. *Cameron,* 306 Mass. at 141, and *Barron* v.

---

[4]The death certificate lists as the immediate cause of death, "gunshot wound." It appears that the father committed suicide.

[5]The wife may have sought guardianship because the husband died intestate, and hence the children were his heirs at law. See note 6, *infra.*

[6]Although the father died intestate leaving his children as his heirs at law, the mother states that the father's parents, the father's lawyer and others have made claims against his estate. The question of the effect, if any, on these claims of an order of the Probate Court ordering child support has not been argued and is not before us.

*Puzo*, 415 Mass. 54 (1993). We turn to those cases and also to *DuMont* v. *Godbey*, 382 Mass. at 234.

In *Gediman*, the child's father was found guilty of nonsupport in 1912 and was ordered to make weekly payments for "the use of" his wife and their daughter. In 1938, some twenty-six years later, the wife made a claim against the estate of the father. He had died in 1937. Her claim was twofold: for arrears alleged to be due her on the order for payments made in 1912 on the criminal complaint; and for a fair and reasonable amount for the past support of herself and child both before and after her divorce.[7] The court held that a proceeding for nonsupport was a criminal prosecution, that an order for payments was not the equivalent of a personal judgment obtained by the wife against the husband or his estate either before or after his death, and the only sanction for the enforcement of the order was to be found in the criminal sentence for which the statute provided. 306 Mass. at 139-140. As to the wife's rights to recover a personal judgment against the husband for support of herself or the child, the court held that such claims had to be brought as a petition for separate support or as a libel for divorce, that the statutory provisions covering the field of civil liability were exclusive, and that there was no common law cause of action. The court went on to say, and this is the language relied on by the administrator:

> "All of these statutes contemplate proceedings in the manner provided in them between living parties and the making of orders to operate prospectively in accordance with the existing financial condition of the parties, but subject to change if conditions change. These statutes do not justify orders or judgments made after the death of a necessary party, operating retroactively, and entered in a form of proceeding not authorized in the statutes themselves."

306 Mass. at 141.

---

[7] She had obtained a divorce, without personal service, in 1923.

In *Cameron* v. *Cameron*, 307 Mass. 609 (1940), the same woman as in *Gediman* appealed from a dismissal of her petition seeking a modification of the divorce decree for an award of alimony. The Supreme Judicial Court gave her claim short shrift, citing part of the language in *Gediman*, quoted above.

In *Barron* v. *Puzo*, 415 Mass. 54 (1993), a case involving alimony, and not child support, the wife filed a complaint for modification some fourteen and one-half years after the husband's final payment of alimony under their divorce decree. That decree, dated March 27, 1974, provided that alimony was to be paid in a designated amount until July 1, 1976, and was to be extended for an additional year if the wife enrolled in college. Significantly, the decree provided that the alimony provisions "shall represent the full and complete obligation of [the husband] to pay alimony . . . to [the wife], and [the wife] agrees to accept all of such payments in full satisfaction of [her] claim for alimony." *Id.* at 55. The wife filed her complaint on December 13, 1991, at a time when her husband was terminally ill. He died on December 24, 1991. The administrator's motion to dismiss the complaint was denied by a probate judge. An interlocutory appeal was authorized, and the Supreme Judicial Court reversed.

After quoting the language of *Cameron* v. *Cameron* and *Gediman*, that the statutes "contemplate proceedings . . . between living parties . . . [and] do not justify orders or judgments made after the death of a necessary party, operating retroactively," the court pointed out that the alimony that had been ordered was limited and fixed, had been paid in full, long before the complaint for modification was filed, and the decree of divorce was explicit that the payments ordered therein were in "full satisfaction" of the wife's claim for alimony. *Barron* v. *Puzo*, 415 Mass. at 56.

We next turn to *DuMont* v. *Godbey*, 382 Mass. at 234, in which the court held that a complaint for a division of property did not abate on the husband's death, where "the divorce decree [which entered in 1974] incorporated an agreement for alimony that *may* have survived the defendant's

death" (emphasis supplied). While the husband was still alive, in 1978, his former wife brought a complaint for division of property pursuant to c. 208, § 34. He died during an adjournment of the trial. His then wife was appointed executrix of his estate and was substituted as defendant.

Citing cases which by reason of court decree or agreement permitted alimony to continue beyond death, the Supreme Judicial Court noted: "Thus the Probate Court could properly determine what, if any, payments were due after the death of the husband, and could modify its decree not only as to the future, but also as to arrears." *Id.* at 240. The court went on to hold, "[w]here no judgment for the assignment of property to the wife had been entered previously, we think the question whether such an assignment should be ordered was a question relative to alimony within the scope of G. L. c. 208, § 37. The action did not abate on the husband's death." *Ibid.* In *DuMont*, the entry of an order assigning property was considered a modification of the alimony award and was permitted after death.[8] The court explicitly stated that it was not deciding whether it would follow *Gediman* in a case where alimony had never been ordered. *Id.* at 240. Earlier in its opinion, the court, after discussing the new provisions of G. L. c. 34 permitting the assignment of property, had suggested that the "1974 reform provides an appropriate occasion for reconsideration of the rule as to alimony," which is that such actions ordinarily do not survive death. *Id.* at 238-239.

The amendments to the child support and divorce statutes since 1940, as we suggested earlier, provide an even more compelling reason to review the continued application of the *Gediman* language. Legislative enactments, both Federal and State, have increased significantly the obligations of parents for child support.

---

[8]We recognize that in *Barron* v. *Puzo*, 415 Mass. at 57 n.2, the court laid stress on the parties' agreement in *DuMont* and described the case as "an action for division of property involving a divorce judgment containing an agreement for the payment of alimony and child support that *might* have survived the defendant husband's death" (emphasis supplied).

Federal law has mandated the establishment of child support guidelines, 42 U.S.C. § 667 (1988), as well as comprehensive enforcement procedures, see 42 U.S.C. §§ 651 et seq. (1988), and Massachusetts has put them in place.[9] Other statutory amendments, some of which are mentioned in the margin,[10] also indicate concern with the support of

[9]See Child Support Enforcement Act, G. L. c. 119A (added by St. 1986, c. 310, § 10B), and former G. L. c. 211B, § 15 (added by St. 1986, c. 310, § 16A, and repealed by St. 1992, c. 379, § 85). See also *Canning* v. *Juskalian*, 33 Mass. App. Ct. 202, 204 n.2 (1992).

[10](a) See Massachusetts statutes: e.g., statutes amending G. L. c. 208, § 28: St. 1975, c. 661, § 1 (authorizing support orders for children up to age twenty-one); St. 1976, c. 279, § 1 (expanding orders beyond support to include education); St. 1983, c. 233, § 76 (requiring health care coverage be extended to a child if the obligor has health care coverage on a group plan); St. 1991, c. 173, § 1 (authorizing support orders for children up to age twenty-three); St. 1993, c. 460, § 61 (requiring modification on complaint if inconsistency between the existing order and child support guidelines or to provide health care coverage. Modification of child support may enter notwithstanding an agreement of the parents that has independent legal significance). See also St. 1986, c. 310, § 12 (amending G. L. c. 208, § 36) (allowing court to require security for payment of alimony or support); St. 1986, c. 310, § 10B (adding G. L. c. 119A, § 1) (creating child support enforcement commission); St. 1986, c. 310, § 10B (adding G. L. c. 119A, § 9) (creating child support trust fund); St. 1989, c. 559 (amending G. L. c. 208, § 34) (requiring the court to "also consider the present and future needs of the dependent children of the marriage" in crafting an assignment of property in a judgment of divorce); St. 1993, c. 460, § 34 (amending G. L. c. 119A, § 12[*b*]) (requiring obligor to obtain health care coverage for child); St. 1993, c. 460, § 37 (amending G. L. c. 119A, § 12[*b*]) (unpaid child support obligation becomes a lien).

While the 1993 amendments were not in the statute at the time of the denial of the motion for modification, "we nevertheless acknowledge the relevant public policy that the amendment[s] represent[ ]." *Pare* v. *Pare*, 409 Mass. 292, 298 n.5 (1991).

(b) See Federal statutes: Child Support Enforcement Amendments of 1984, appearing in 42 U.S.C. (1988): e.g., § 653 (allowing States access to Social Security numbers to track down obligors); § 654(20) (requiring States to enact all laws and implement all procedures enumerated in 42 U.S.C. § 666); § 654(21) (allowing States to impose fee on overdue support); § 658 (providing incentives to States to create cost-effective enforcement programs); § 666 (a) & (b) (requiring States to enact laws to withhold income of amounts payable as support, use State income tax refund for overdue support, require guarantee to secure payment of overdue support, provide information of overdue support to consumer reporting agencies, create liens on real and personal property for overdue support, withhold wages in order to assure collection of possible arrearages); § 666(c)

children of divorced parents. Indeed, the Legislature has declared, "[i]t is the public policy of the commonwealth that dependent children shall be maintained, as completely as possible, from the resources of their parents, thereby relieving or avoiding, at least in part, the burden borne by the citizens of the commonwealth."[11] St. 1987, c. 490, § 13 (amending G. L. c. 119A, § 1).

We return to the proceedings in the case at bar. The judge entered a temporary judgment on May 4, 1992, properly determining, in the first instance, the right to temporary custody, leaving the question of permanent custody and child support for subsequent adjudication. The judge contemplated further orders; the previous order requiring the mother to pay child support had obviously become obsolete. In many respects the situation was similar to *DuMont* where the husband died during the proceedings on property division. As pointed out in *Seibly* v. *Circuit Judge*, 105 Mich. 584, 586-587 (1895) (discussing alimony), if proper procedures are followed and the death of the husband ousts the court of jurisdiction, the result is "manifestly unjust."

General Laws c. 208, § 28,[12] does not limit the time during which a modification can be made, nor impose an express

---

(allowing States to establish a procedure under which support payments would be paid through the State). See also Child Support Recovery Act of 1992, as codified in 18 U.S.C. § 228 (Supp. IV 1992) (making it a crime for failing to pay past child support for child who resides in another State).

[11]The 1993 amendment to G. L. c. 208, § 28, St. 1993, c. 460, § 61, reiterates the public policy.

[12]As in effect prior to St. 1993, c. 460, § 61, G. L. c. 208, § 28, provides:

"Upon a judgment for divorce, the court may make such judgment as it considers expedient relative to the care, custody and maintenance of the minor children of the parties and may determine with which of the parents the children or any of them shall remain or may award their custody to some third person if it seems expedient or for the benefit of the children. Upon a complaint after a divorce, filed by either parent or by a next friend on behalf of the children after notice to both parents, the court may make a judgment modifying its earlier judgment as to the care, custody and maintenance of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the

requirement that the parties be alive. "[T]he needs of the child for support are equally as great in the case of the child whose divorced father dies as in the case where the divorced father survives." *Hornung* v. *Estate of Lagerquist*, 155 Mont. 412, 418-419 (1970).

This case involves special circumstances. There was a change in custody, and the support order had become obsolete; further orders were clearly contemplated. Also, the petition for modification was filed within the time limits of G. L. c. 197, § 9 (action by creditor against executor or administrator to be brought within one year after death). In view of the "broad discretion [given to our probate judges] to fashion judgments in divorce proceedings that will best protect the interests and welfare of the parties' minor children," *Pare* v. *Pare*, 409 Mass. 292, 298-299 (1991), and in view of the policy expressed by the Legislature, in the special circumstances of this case, at least, we consider the *Gediman* interpretation

---

best interests of the children. The court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance. The court may make appropriate orders of maintenance, support and education for any child who has attained age twenty-one but who has not attained age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program, excluding educational costs beyond an undergraduate degree. When the court makes an order for maintenance or support of a child, said court shall determine whether the obligor under such order has health insurance or other health coverage on a group plan available to him through an employer or organization or has health insurance or other health coverage available to him at a reasonable cost that may be extended to cover the child for whom support is ordered. When said court has determined that the obligor has such insurance or coverage available to him, said court shall include in the support order a requirement that the obligor exercise the option of additional coverage in favor of such child or obtain coverage for the child."

of the prior statutes[13] inapplicable and hold that the probate judge had jurisdiction to modify the child support provision of the original divorce judgment[14] after the father's death. We express no opinion as to what order, if any, should be entered.

The order denying the motion for modification is reversed, and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*

---

[13]We note that in *Gediman* the quoted language that the statutes contemplate proceedings "between living parties" was not entirely necessary to the decision since the wife did not follow the proper procedure. In *Cameron* v. *Cameron*, where the procedure was correct, the question appears to have related only to alimony.

[14]The authorities elsewhere are divided. We note, however, that there is significant authority allowing a modification of a divorce judgment after the death of one of the parents. See, e.g., *Kress* v. *Kress*, 219 C.A.2d 173, 174-175 (1963); *Garber* v. *Robitshek*, 226 Minn. 398, 404-405 (1948) (upward modification); *Columbo* v. *Walker Bank & Trust Co.*, 26 Utah 2d 350, 352-354 (1971) (downward modification). See also *Welsh* v. *Welsh*, 346 Mich. 292, 295 (1956) (alimony). See generally Annot., Death of Obligor Parent as Affecting Decree for Support of Child, 14 A.L.R. 5th 557 (1993), particularly § 7, "View that death of obligor does not preclude modification," *id.* at 603-606. See also Clark, Law of Domestic Relations § 18.2 (2d ed. 1987) suggesting, at 379, that the relevant question should not be whether the particular order is to be construed as surviving the obligor's death, but rather "the determining factors should be what equity and fairness demand at the time of the obligor's death, in the light of the circumstance then prevailing."