NANCY LEE HAMILTON[1] *vs.* SALVATORE PAPPALARDO, JR.

No. 95-P-794.

Bristol. October 15, 1996. - April 11, 1997.

Present: DREBEN, GILLERMAN, & JACOBS, JJ.

*Divorce and Separation,* Separation agreement, Child support, Modification of judgment.

A proceeding for modification of a child support order embodied in a separation agreement merged in the judgment of divorce was remanded for the judge's determination of the parties' respective liability for educational expenses where the separation agreement had specifically contemplated such adjudication. [475-477]

COMPLAINT for divorce filed in the Bristol Division of the Probate and Family Court Department on September 13, 1979.

A complaint for modification, filed on June 18, 1990, was heard by *Robert A. Scandurra,* J.

*Max Volterra* for the plaintiff.

*John F. D. Jacobi, III,* for the defendant.

JACOBS, J. The separation agreement of the parties was incorporated and merged in their 1980 divorce judgment. It provided that the plaintiff was to have custody of the two children of the parties, Steven, then six years old, and Alison, then three years old, and that the husband pay weekly support of forty-five dollars per child. Among its other provisions were the following:

"The Wife shall keep the Husband informed of all matters affecting the children's health and including the results of all consultations with doctors."

"The parties have intentionally omitted any descrip-

[1]Formerly Nancy Lee Pappalardo.

tion of further liability for the education, tuition, room, boarding, and books of their children. The parties stipulate that in the absence of their future agreement on that matter, the Court having appropriate jurisdiction shall adjudicate said liability at the appropriate time and in view of the law then appropriate."

On June 19, 1990, the plaintiff filed a "complaint for modification" alleging changes in circumstances in the form of an increased need for child support and as a result of Steven having been diagnosed "on or about July 24, 1987," as being moderately to severely learning disabled, necessitating private schooling for the two prior years at a cost of approximately $27,950 per year. She requested that the divorce judgment be modified by increasing child support from $45 to $135 per week per child and ordering the defendant "to contribute . . . to the cost of the special education" of Steven.

After a trial, a judge of the Probate and Family Court, on September 9, 1994, made findings of fact, none of which is contested and which establish the following: Steven is "a special needs child" with motor, speech, and thought process deficiencies. He attended the Norton public schools through the seventh grade, receiving special needs services pursuant to an Individual Education Plan (IEP). In 1987, the plaintiff was notified by the Norton school system that Steven was not doing well and that intervention was required. She sought advice and assistance from various officials and professionals. As a result, she retained the service of a qualified educational consultant who carried out an extensive investigation and concluded that Steven "was being poorly served at the Norton school system and that he needed totally different services." When the Norton school system refused to modify its plan for Steven, the plaintiff placed him in the Landmark School in accordance with the recommendation of the consultant. The consultant's advice later was confirmed by a hearing officer of the Bureau of Special Education Appeals. The judge made the following findings as to the defendant's involvement in these events:

"However, at no time prior to August 1988, did the plaintiff ever inform the defendant of the IEP proposed for Steven's 1988-89 school year by the Town of Norton; that she had hired an educational consultant; that

she had inquired as to availability of private special needs schools for Steven; that she had applied to Landmark School for Steven; the cost of same; or that she had rejected Norton's proposed IEPs.

"At that time, she handed to the defendant a copy of the acceptance letter (which plaintiff had signed July 25, 1988) and a copy of a monthly budget plan document from Manufacturers Hanover Educational Services Corporation, The Tuition Plan of New England, Inc. showing budget payments of $2,400 per month due from June 1, 1988 through March 1, 1989 (totalling $24,000.00). At that time, the plaintiff stated to the defendant 'Steven is going to Landmark School. Your share of the cost is $1,500 per month.'

"At that time, the defendant stated that he knew nothing about this, and would not make any such payments, and Steven would stay in the Norton Schools."

The parties did not thereafter discuss the fact or cost of Steven's education at the Landmark School until the plaintiff filed her complaint for modification.

Steven attended the Landmark School during the school years of 1988-1989, 1989-1990, and 1990-1991. The total expenses related to that attendance during those years was $83,651.72, $60,582.64 having been expended during the first two years and $23,069.08 during the third year. When the town of Norton refused to reimburse the plaintiff for the expenses incurred by her in behalf of Steven at the Landmark School, she brought a law suit against the town which she settled in 1993 for $80,000. She used $63,845.26 of the proceeds to pay legal and consulting fees.[2] At the time of the judge's decision, the plaintiff was earning $37,000 a year from her occupation as a school librarian, and the defendant

---

[2]Our record does not indicate to whom payments were made or what period they covered. In interrogatories signed on October 23, 1990, the plaintiff stated that she had paid and incurred fees for the services of an educational consultant totalling $33,000 and legal fees relating to the "chapter 766" [special education] appeal in the amount of $37,000. In a financial statement filed on October 28, 1993, the plaintiff listed liabilities for legal fees totalling $49,392, and educational consultation in the amount of $35,000. An affidavit of one of plaintiff's attorneys indicates that her

$47,450 per year from his occupations as a teacher and as an officer in the United States Army Reserve. The judge determined that Steven was not emancipated and principally dependent upon the plaintiff, entitling her to child support from the defendant.

The judge further found that a material change of circumstances had occurred since the time of the divorce as a result of the plaintiff's increased needs for child support and Steven's having been diagnosed with a "severe learning disability" which "created the need for private schooling for him." He ordered that a judgment enter on the complaint for modification containing, among other provisions,[3] an order that the defendant pay to the plaintiff $10,425 "representing his share of the education expense, legal fees and consulting fees incurred by the plaintiff for Steven . . . for the 1990-1991 school year."

The judge concluded as follows:

> "The defendant owes the plaintiff nothing with respect to the expenses for attendance of Steven . . . at the Landmark School prior to the 1990-1991 school year on grounds as follows:
>
> (a)   Modification actions may only work prospectively from filing of the Modification, and two of the three school years had already passed and been paid for by the plaintiff prior to the filing of the Complaint for Modification in June, 1990 . . .
>
> (b)   The plaintiff never made demand upon or requested that the defendant pay any portion of the costs of

legal fee was reduced from "in excess of $35,000" to $15,000 "in order to achieve final settlement."

[3]Included in the other provisions of the modification judgment, none of which is the subject of appeal, were orders that the defendant pay child support to the plaintiff in the amount of $125 per week "until the last child completes four (4) years of higher education or becomes emancipated, which ever occurs sooner," and that the parties share the burden of college expenses in accordance with a formula based upon their respective earned incomes. At the time of the judge's decision, Alison had commenced her freshman year at Arizona State University and Steven, who had graduated from high school in July, 1993, had enrolled in a community college in Florida especially suited for persons with learning disabilities and was taking preparatory courses "prior to full entry into the community college program."

Landmark School until the filing of the Complaint in June,1990[4] ;

(c)    The plaintiff never consulted with the defendant nor obtained his assent to the choice of schooling for Steven . . ., or the medical evaluations;

"The defendant does owe the plaintiff for a pro-rata portion of legal and consulting fees incurred by the plaintiff, even though much of these fees were incurred prior to the 1990-1991 school year. The incurring of these fees was necessary for the prosecution and settlement of the lawsuit, which yielded monies toward reimbursement for the '90-'91 school year. The amount of the defendant's contribution toward these fees is included in the $10,425 owed.

"While the legalities of this situation preclude this Court from ordering reimbursement to the plaintiff for monies expended for Steven's benefit prior to the '90-'91 school year, the court recognizes the sacrifice and devotion that the plaintiff showed toward her son, and the timeless efforts and dedication displayed by her. The plaintiff stretched her finances to the utmost, for a good and worthy cause. She is commended wholeheartedly."

The plaintiff appeals from the judgment claiming that the judge was incorrect in his belief that he was without power to consider the expenses incurred prior to the filing of her complaint and that it was therefore error for him to apportion only the expenses for the third year at Landmark. She asks that the order of the court be set aside and that the case be remanded for determination of the parties' respective liabilities for the first two years at Landmark. The defendant cross appealed, claiming the judge erred in ordering reimbursement of any deficiency for counselling fees and transactional costs resulting from the plaintiff's unilateral settlement of the law suit and that, in any event, it was error to order the defendant to pay fifty-six percent of those transactional costs since they related to all three years of Steven's atten-

---

[4]This determination appears inconsistent with the judge's earlier finding that the plaintiff informed the defendant in 1988 that his "share of the cost [of attending Landmark] is $1,500 per month." See 473, *supra.*

dance at Landmark. He argues that the judgment should be affirmed with respect to the issues raised by the plaintiff but that the money judgment of $10,425 against him should be reversed or reduced.

In the circumstances, we need not address the principle by which the judge felt constrained — that a modification of a child support order contained in a divorce judgment may apply only to the period subsequent to the date of the filing of the relevant complaint for modification.[5] Instead, we look to and rely upon the separation agreement incorporated in the divorce judgment in which the parties expressly and intentionally omitted making provision for the education of their children and anticipated the possibilities of an "absence of their future agreement on that matter," in which event they agreed to look to a court of appropriate jurisdiction to adjudicate their respective liabilities. At the trial, there was uncontroverted evidence that the parties were aware, at the time of their divorce, that Steven had developmental problems. Significantly, the plaintiff's "complaint for modification" not only contained a straightforward demand for an increase in weekly child support but also can be read as requesting the court to make the determination of liability for educational expenses generally anticipated in the separation agreement. The latter request constitutes a clear invocation of the equitable jurisdiction of the Probate Court to interpret and enforce separation agreements entered into by a husband and wife. See G. L. c. 208, § 33; *Feakes* v. *Bozyczko,* 373 Mass. 633, 635 (1977); *Larson* v. *Larson,* 28 Mass. App. Ct. 338, 340-341 (1990). Of course, the denomination of the plaintiff's pleading as a complaint for modification does not preclude the combination of a request for equitable relief with one for modification. See *Reum* v. *Brazeau,* 1 Mass. App. Ct. 549, 551 (1973).

Involved here is no ordinary request for modification based upon unpredicted changes in financial condition, but rather a special circumstance combining what may be an expressly anticipated, but undefined, child support obligation with the communication difficulties often experienced by divorced parents faced with taxing and emergent child care needs. In

[5]Since 1988, retrospective modifications of child support orders appear to be limited by G. L. c. 119A, § 13. St. 1987, c. 714, § 1, approved January 12, 1988.

such an unusual and special circumstance, the court's jurisdiction to give content to and enforce the parties' original inchoate and amorphous agreement should be determined as much by considerations of equity and fairness as by the date of the filing of the complaint for relief. Compare *Clark* v. *Barba,* 37 Mass. App. Ct. 322, 330-331 (1994).

Upon remand, and to the extent that the parties original agreement and the judgment of divorce left their obligations in doubt, the court should "attempt to ascertain the objective sought to be accomplished by the parties," *Feakes* v. *Bozyczko, supra* at 635, in requesting that a court of appropriate jurisdiction should "adjudicate [their] liability" for the education of Steven. In assessing that liability, the judge may take into account all relevant equitable factors including not only the financial circumstances of the parties and the duration of and necessity of Steven's enrollment at the Landmark School, but also the extent to which the defendant unjustifiably may have been excluded from the decision-making process relating to Steven's special education and the prosecution and settlement of the law suit against the town of Norton. In so doing, the judge may, in his discretion, make further findings and reopen the trial. In light of our decision, there is no need to address the cross-appeal issues other than to note that the judge was not prohibited, as matter of law, from ordering reimbursement of counseling fees and transactional costs relating to the law suit. Accordingly, the judgment of modification is affirmed except for paragraph number five thereof ordering the defendant to pay to the plaintiff $10,425 "representing his share of the educational expenses, legal fees and consultant fees incurred by the plaintiff for Steven Pappalardo for the 1990-1991 school year," which order is vacated, and the case remanded to the Probate Court for further consideration in accordance with this decision.

*So ordered.*