Since their 2010 divorce, the parties have filed at least four complaints for modification and ten complaints for contempt. The docket reflects over 600 entries spanning eight years. In this appeal, which is the third addressed by our court, the parties continue to litigate the financial terms of their divorce. The wife appeals from various judgments and orders that dismissed her complaints for modification and found her in contempt of the divorce judgment. The husband cross appeals from a judgment of modification. Discerning no error or other abuse of discretion, we affirm.
Background. 1. Procedural history of divorce action. On November 9, 2010, during the trial of the husband's divorce complaint, the parties executed a hand-written agreement (agreement) that was read into the record and later memorialized in a writing signed by both parties. Pursuant to paragraph two of the agreement, both parties waived their right to receive periodic alimony payments from the other. In consideration of the husband's alimony waiver, the wife agreed to pay the husband $1 million in two lump sum payments on or before December 1, 2013, and December 1, 2018. In addition, the wife agreed to pay annually to the husband "an amount for alimony equal to four percent of the outstanding indebtedness" on any unpaid amounts of the lump sum. The wife asserted that she planned to make these payments using money she earned through her business, Cambridge NanoTech (CNT).
The agreement set forth the parties' respective financial obligations following the divorce. It divided marital assets, provided for health insurance and education expenses for the parties' minor children, and set forth the parties' obligations to maintain life insurance. The parties agreed that the terms of the agreement would survive the judgment of divorce, "except as to provisions relating to the children." Before the agreement was read into the record at trial, the judge advised the parties that its terms were binding and that "what is read into the record is what is going to be found as part of the judgment" of divorce. After hearing its terms, the judge concluded that the agreement was "fair and reasonable."
A bifurcated judgment of divorce nisi entered which did not address custody and visitation of the children. On February 17, 2011, a supplemental judgment entered with respect to custody and visitation. Both parties appealed. Following a remand from this court, a judge of the Probate and Family Court issued findings of fact, conclusions of law, and an amended rationale that was affirmed by a different panel of this court in an unpublished decision issued pursuant to our rule 1:28. Phelps v. Becker, 84 Mass. App. Ct. 1105 (2013) (Phelps I ). Neither party challenged the terms of the agreement in that appeal.
In 2012, the husband remarried. That same year, CNT was sold and its assets were dispersed to creditors. On August 2, 2012, the wife filed a complaint seeking a declaration that her alimony obligation under the agreement was terminated by law pursuant to the Alimony Reform Act of 2011, G. L. c. 208, § 49 (a ). On August 22, 2014, this court held that the four per cent interest payments identified in the agreement constitute alimony that is not modifiable under the Alimony Reform Act because the parties agreed that those provisions survived the judgment of divorce. Becker v. Phelps, 86 Mass. App. Ct. 169, 172 (2014) (Phelps II ). By contrast, the lump sum payments were part of the overall division of marital property and were not modifiable because the judge found the agreement to be "fair and reasonable."
2. Postdivorce litigation. The parties filed numerous postdivorce actions and motions. Many complaints were filed before other complaints had been resolved. As best we can discern, the following actions are the subject of this appeal.
a. August 13, 2013, complaint for modification. On August 13, 2013, the wife filed a complaint for modification of her child support obligation.[2] On October 17, 2016, following six days of trial, a second judge of the Probate and Family Court found a material change in circumstances based upon (1) the failure of CNT and the wife's continued unemployment, and (2) the husband's increased income. Insofar as is relevant here, the judge attributed a gross annual income to the wife of $30,000. Although the judge's findings of fact, conclusions of law, and rationale on the wife's complaint for modification entered on October 17, 2016, judgment did not enter until July 3, 2017. On July 6, 2017, the husband filed a notice of appeal from the modification judgment. On August 4, 2017, the wife also filed a notice of appeal from the judgment.[3]
b. November 19, 2013, complaint for contempt. On November 19, 2013, the husband filed a complaint for contempt asserting that the wife had received tax refunds from CNT but had not paid the husband his proportionate share as required by the agreement. Following an evidentiary hearing, the judge who had granted the divorce found the wife in contempt and ordered her to pay fifty percent of the tax refunds to the husband, along with his costs and attorney's fees. A subsequent motion by the wife to vacate the contempt order was allowed because there was no finding regarding the wife's present ability to pay. On August 9, 2017, a judgment of not guilty entered on the complaint for contempt. The judgment explicitly did not relieve the wife "of her obligation to make two lump sum payments in the amount of $500,000 each in lieu of alimony." The wife timely appealed.[4]
c. August, 2014, actions. On August 12, 2014, the wife filed a "complaint for modification of alimony due to countervailing equities." The wife claimed that she lacked the financial means to make the alimony payments called for in paragraph two of the agreement; specifically, she could not pay the husband $1 million without becoming a public charge. She requested that her obligations under the agreement be terminated and that the husband be ordered to pay her support in the amount of $2,000 per week.
On August 25, 2014, three days after the decision in Phelps II, the wife moved to vacate the agreement and an August 16, 2011, contempt judgment.[5] She claimed that the husband had misrepresented his income and the value of his business at the time of the divorce and in postdivorce proceedings.
On October 22, 2014, the wife's motion to vacate the agreement was denied in a margin endorsement.[6] On October 30, 2014, the husband moved pursuant to Mass. R. Dom. Rel. P. 12 (b) (6), to dismiss (1) the modification complaint, (2) the motion to vacate the agreement, and (3) the motion to vacate the April 16, 2011, contempt judgment. On January 21, 2015, the husband's motion was allowed. Relying on our decision in Phelps II and the parties' submissions, the judge concluded that the lump sum payments were not modifiable because the lump sum payments do not constitute spousal support.[7] On January 23, 2015, judgment entered dismissing the wife's modification complaint, the motion to vacate the agreement, and the motion to vacate the April 16, 2011, contempt judgment. The wife timely appealed.[8]
d. May 26, 2015, complaint for modification. On May 26, 2015, the wife filed a complaint for modification alleging that the husband refused to co-parent with her, was drinking heavily, and was scaring the children. The wife sought, among other things: (1) sole custody of the children, (2) an order that the husband pay all expenses incurred on behalf of the children, (3) appointment of a guardian ad litem, and (4) appointment of a parenting coordinator (to be paid for by the husband). The wife further requested that she be relieved of her obligation to make the lump sum payments, that the husband be ordered to pay her alimony, that the husband provide for the children to receive at least fifty percent of his estate upon his death, and that the husband be liable to her for child support in the amount of $965 per week. On September 10, 2015, the wife moved to amend her complaint by adding a claim for authorization to remove the children from the Commonwealth.[9] That same day, the husband moved to dismiss portions of the complaint pursuant to Mass. R. Dom. Rel. P. 12 (b) (6). Among other things, the husband asserted that the financial relief sought by the wife was precluded by the principle of res judicata.
On June 22, 2016, a third judge of the Probate and Family Court issued a partial judgment of modification that dismissed those portions of the mother's complaint which sought relief from her financial obligations to the husband. The judge noted that the wife repeatedly had sought to avoid her obligations under the parties' surviving agreement, and held that "[h]er arguments have already been litigated in this [c]ourt and she should not be allowed to continue to seek the same relief."
On July 21, 2016, the wife filed a motion for entry of separate and final judgment and/or to vacate those portions of the June 22, 2016, partial judgment that (1) dismissed her financial claims, and (2) prohibited her from further filings.[10] She also filed a notice of appeal from the June 22, 2016, partial judgment.[11]
Discussion. 1. Complaint for modification based on countervailing equities. We review the sufficiency of the wife's complaint for modification de novo, taking the wife's factual allegations as true and drawing all reasonable inferences in her favor.[12] Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). In doing so, "we look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Id. We also may consider the Probate and Family Court records in the parties' related actions. Jarosz v. Palmer, 49 Mass. App. Ct. 834, 835-836 (2000), S.C., 436 Mass. 526 (2002).
In her complaint, the wife alleges that, due to the failure of CNT, she lacks the financial resources to make the alimony payments called for in the agreement and will become a public charge if required to pay the husband $1 million. She claims she has no income or assets except for $40,000 held in escrow for the benefit of the husband and $17,000 in a retirement fund. The marital home is leveraged, she has paid $1.5 million in legal fees since 2008, and she requires spousal support to "keep the marital home and meet her primary responsibility to continue to take excellent care of the children."
The judge dismissed the wife's modification complaint, reasoning that the countervailing equities doctrine only applies to alimony obligations in a surviving separation agreement and the lump sum payments are not alimony. See Phelps II, 86 Mass. App. Ct. at 172. It is well settled that property division is not modifiable. See Taverna v. Pizzi, 430 Mass. 882, 886 (2000) ; Drapek v. Drapek, 399 Mass. 240, 244 (1987) ("Unlike alimony, a property settlement is not subject to modification"); DuMont v. Godbey, 382 Mass. 234, 238 (1981) ("The provision for modification of alimony judgments, G. L. c. 208, § 37, has not been made applicable to modification of assignments of property"). See also Silverman v. Spiro, 438 Mass. 725, 737 (2003) ("[T]he provisions of the separation agreement ... concerning distribution of marital property remain an independent contract between the parties, which the judge could not alter"); Heins v. Ledis, 422 Mass. 477, 483 (1996) ("While alimony is modifiable on the showing of a material change in circumstances, see G. L. c. 208, § 37 (1994 ed.), property settlements are not"). Because the countervailing equities doctrine is a basis for modification,[13] it does not apply to nonmodifiable property settlements. As there appears to be no genuine dispute that the lump sum payments were part of the property settlement,[14] they are not subject to modification and dismissal of the wife's modification complaint was proper.
Even assuming arguendo that the lump sum payments could be modified on the basis of countervailing equities, which we do not suggest, dismissal of the wife's modification complaint would still have been proper. To be entitled to relief on this ground, the wife's complaint must support an inference that (1) the wife is or will become a public charge, (2) the husband has not complied with the provisions of the agreement, or (3) there exists some other countervailing equity "at least as compelling as these two grounds." Stansel v. Stansel, 385 Mass. 510, 515-516 (1982).
The wife's complaint does not allege that the husband has failed to comply with the provisions of the agreement. While it does allege that the wife will become a public charge if required to pay the husband $1 million, this conclusory allegation is not borne out by the factual allegations or the wife's March 24, 2014, financial statement.[15] The wife has assets in the form of the marital home, a vehicle, a checking account in her name, $40,000 held in escrow, and $33,854.98 in a retirement account. The judge was not required to accept her assertion that she has no assets. See Jarosz v. Palmer, 49 Mass. App. Ct. at 836 (judge is "not required to accept as true those facts which the court could take judicial notice are not true" [quotation omitted] ). The wife's allegations simply do not support an inference that there has been "a deterioration in the economic situation of the more dependent spouse which renders that spouse unable to meet basic needs, so that public support is likely to be required in behalf of the dependent spouse and children in turn dependent upon her or him." McCarthy v. McCarthy, 36 Mass. App. Ct. 490, 494 (1994).
"In the absence of fraud, coercion, or countervailing equities, a signatory to an agreement is bound by its terms." DeMarco v. DeMarco, 89 Mass. App. Ct. 618, 624 (2016). "To hold otherwise would negate the integrity and inviolability of the innumerable surviving agreements relied upon by parties across the Commonwealth." Id. Because the wife's complaint fails to state a claim for relief from the lump sum provision of the agreement on the basis of countervailing equities, her complaint for modification was properly dismissed. See Hayes v. Lichtenberg, 422 Mass. 1005, 1006 (1996) ; Broome v. Broome, 43 Mass. App. Ct. 539, 545-546 & 545 n.14 (1997).
The wife's contract-based theories of impossibility of performance, frustration of purpose, and unconscionability are equally unavailing.[16] "[T]he doctrine of frustration of purpose is a companion rule to the doctrine of impossibility." Karaa v. Kuk Yim, 86 Mass. App. Ct. 714, 717 (2014). See Mishara Constr. Co. v. Transit-Mixed Concrete Corp., 365 Mass. 122, 128-129 (1974). "Both doctrines concern the effect of supervening circumstances upon the rights and duties of the parties." Chase Precast Corp. v. John J. Paonessa Co., 409 Mass. 371, 374 (1991). In determining whether either doctrine applies, the principal question is "whether an unanticipated circumstance, the risk of which should not fairly be thrown on the promisor, has made performance vitally different from what was reasonably to be expected" (quotation omitted). Id.
Here, the wife was aware of CNT's precarious financial position before she entered into the agreement. She knew that she was barred from removing any funds from CNT beyond her fixed salary, and she executed the agreement even though there was "no other foreseeable or conceivable source of payment other than from CNT." The wife sought the lump sum payment provision even though she was insolvent at the time, and her obligation was not contingent upon the success of CNT. She should not have been surprised that her obligation continued even if CNT did not. "[A] contracting party cannot be excused where the only 'frustration' consists in the fact that known risks assumed by [her] have turned out to [her] disadvantage." Baetjer v. New England Alcohol Co., 319 Mass. 592, 602 (1946). Where the wife knew of CNT's precarious financial position when she entered into the agreement, its failure "was a risk [she] assumed." Essex-Lincoln Garage, Inc. v. Boston, 342 Mass. 719, 722 (1961).
"Under Massachusetts law, '[t]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).' " Machado v. System4 LLC, 471 Mass. 204, 218 (2015), quoting Storie v. Household Int'l, Inc., U.S. Dist. Ct., No. 03-40268 (D. Mass. Sept. 22, 2005). Such unconscionability is not present here, where the wife sought the lump sum payment provision in order to negate periodic alimony. The wife was represented by counsel, she understood the agreement, she was satisfied with its terms under all circumstances, and she signed it of her own free will. Thus, "[o]n this record, there is no viable claim of unconscionability." Miller v. Cotter, 448 Mass. 671, 680 (2007).
2. Motion to vacate the agreement. The wife moved to vacate the agreement pursuant to Mass. R. Dom. Rel. P. 60 (b), claiming that the husband had misrepresented his income and the value of his business at the time of the divorce and in postdivorce proceedings. A motion for relief from a judgment on the basis of fraud, misrepresentation, "or other misconduct of an adverse party" must be brought within one year after the judgment was entered. Mass. R. Civ. P. 60 (b) (3), 365 Mass. 828 (1974).[17] The wife did not file her motion to vacate the 2010, agreement until 2014. The motion was not timely and was properly denied. Sahin v. Sahin, 435 Mass. 396, 400 (2001).[18]
3. Husband's cross appeal.[19] After hearing six days of testimony and considering several exhibits, including evidence of the wife's finances and her efforts to find employment, a judge of the Probate and Family Court concluded that "[t]he evidence at trial did not support attribution to [m]other at a higher level of income" than $30,000 per year. In a cross appeal, the husband claims error in the judge's evaluation of the evidence; specifically, he argues that the judge ignored a full-time job offer that the wife declined. The argument is unavailing.
The judge specifically discussed the offer from Picosun and found that it had been withdrawn on December 6, 2014. Thus, the judge found, "there was no evidence ... to suggest that [m]other ever turned down a legitimate offer in her field after losing her position with Ultratech." We defer to the judge's credibility determinations and assessment of the weight of the evidence, Lundgren v. Gray, 41 Mass. App. Ct. 451, 457 (1996), and see nothing clearly erroneous in his findings. See Mass. R. Dom. Rel. P. 52 (a).
4. Request for attorney's fees. Finally, the husband seeks an award of appellate attorney's fees, claiming that the wife's appeal is frivolous. While the wife's unrelenting attempts to undo the financial terms of the agreement give us pause, and her legal arguments have failed to persuade us, we decline to exercise our discretion to award attorney's fees and costs. See Masterpiece Kitchen & Bath, Inc. v. Gordon, 425 Mass. 325, 330 n.11 (1997).
Conclusion. The January 23, 2015, judgment dismissing the wife's complaint for modification on the ground of countervailing equities is affirmed. So too is the October 22, 2014, order denying the wife relief from so much of the parties' agreement as requires the wife to pay the husband $1 million. Finally, the July 3, 2017, judgment of modification is affirmed.
So ordered.
Affirmed

The complaint is not in the record.

We decline to address the wife's appeal from this judgment because her notice of appeal was not timely and she makes no argument regarding the judgment in her brief. See Mass. R. A. P. 4 (a), as amended, 464 Mass. 1601 (2013) (notice of appeal must be filed within thirty days after entry of the judgment); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975) ("appellate court need not pass upon questions or issues not argued in the brief").

We decline to address this appeal because the wife makes no argument in her brief regarding this judgment. Mass. R. A. P. 16 (a) (4).

On April 15, 2011, the husband filed a complaint for contempt. The wife answered and asserted a counterclaim. On August 16, 2011, a judgment of guilty entered on the contempt. The basis of the contempt is unclear as none of the pleadings have been included in the record. The wife did not appeal from the judgment of contempt.

The judge wrote that "the allegations do not rise to the level of fraud as defined by case law under Mass. R. Dom. Rel. P. 60 (b)."

Specifically, the judge stated: "Since the countervailing equities standard only applies to alimony obligations in a surviving [s]eparation [a]greement, and the lump sum payments are not considered alimony, as recognized by both parties and the Appeals Court, the Court is unable to consider a [c]omplaint for [m]odification of [a]limony."

We decline to address the wife's appeal from the denial of her motion to vacate the April 16, 2011, contempt judgment because the judgment has not been included in the record. Therefore, we are unable to review the judge's decision. See State Line Snacks Corp. v. Wilbraham, 28 Mass. App. Ct. 717, 720 (1990).

The motion to amend was allowed and the mother filed an amended complaint. The amended complaint is not in the record.

The June 22, 2016, partial judgment that has been included in the record does not contain these additional provisions. A "further temporary order" issued by the same judge on February 29, 2016, provides that "[n]either party shall be able to file any further pleadings with this Court without express written permission of the trial judge."

We decline to address this appeal because the wife makes no argument regarding the partial judgment in her brief. Mass. R. A. P. 16 (a) (4).

Because the text of Mass. R. Dom. Rel. P. 12 (b) (6), is identical to that of Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), we may look to cases under the rule of civil procedure when analyzing the mother's complaint. DeMarco v. DeMarco, 89 Mass. App. Ct. 618, 621 n.5 (2016).

See, e.g., Ames v. Perry, 406 Mass. 236, 241 (1989) ; Stansel v. Stansel, 385 Mass. 510, 512-514 (1982) ; Knox v. Remick, 371 Mass. 433, 434 (1976).

The wife's counsel conceded at oral argument that the lump sum payments were part of the property division.

Although the wife filed a financial statement on August 14, 2014, and her complaint for modification refers to that statement, she did not include that statement in the record on appeal. The husband has included the wife's March 24, 2014, financial statement in a supplemental appendix, which he sought permission to file. We allow his motion and consider the documents in the supplemental appendix.

We note that these defenses are available in an action for breach of contract, which the husband has not brought.

The provisions of Mass. R. Dom. Rel. P. 60 (b) (3) are identical to those of Mass. R. Civ. P. 60 (b) (3). See Sahin v. Sahin, 435 Mass. 396, 398 n.4 (2001).

The wife fares no better on the merits, for we agree that "the allegations do not rise to the level of fraud as defined by case law." The figures used by the parties in 2010, to determine the value of the husband's business were financial estimates, not statements of fact, Sahin v. Sahin, 435 Mass. at 403, and the tax returns upon which the wife relies for her claim that the husband misrepresented his weekly income have not been included in the record. Accordingly, we discern no abuse of discretion in the judge's reasoning. See Berube v. McKesson Wine & Spirits Co., 7 Mass. App. Ct. 426, 429 (1979) ("[t]he exercise of the power to grant relief from a judgment rests within the sound discretion of the judge").

The wife has claimed in a filing after oral argument that the cross appeal is not properly before us. However, the record shows that the husband timely appealed after judgment entered on July 3, 2017.