En el Tribunal Supremo de Puerto Rico

| Luz C. Aponte<br>     Demandante-Recurrida<br><br>     .V<br><br>Eliseo Barbosa Dieppa<br><br>     Demandado-Recurrente | Certiorari<br><br>98TSPR113 |
| --- | --- |

Número del Caso: CC-97-187

Abogado Parte Peticionaria:       Lcdo. Benjamín García González

Abogado Parte Recurrida:       Lcda. Norma I. Piñero Cintrón

Abogado del Procurador General:     Lcda. Roxana Badillo Rodríguez

Tribunal de Instancia: Superior, Sala de Caguas

Juez del Tribunal de Primera Instancia: Hon. Ramón A. Buitrago Iglesias

Tribunal de Circuito de Apelaciones: Circuito Regional VI

Juez Ponente: Hon. Pesante Martínez

Fecha: 7/24/1998

Materia: Alimentos Recíprocos

     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correciones del
     proceso de compilación y publicación oficial de las
     decisiones del Tribunal. Su distribución electrónica se hace
     como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luz C. Aponte

    Demandante-Recurrida

       v.                    CC-97-187      Certiorari

Eliseo Barbosa Dieppa

    Demandado-Recurrente

Opinión del Tribunal emitida por el Juez Presidente señor ANDRÉU GARCÍA

San Juan, Puerto Rico, a 24 de julio de 1998

Los tribunales de Primera Instancia y Circuito de Apelaciones que intervinieron en este caso emitieron sus dictámenes bajo la vigencia de la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, Ley Núm. 71 de 20 de junio de 1956, según enmendada, 32 L.P.R.A. §§ 3311-3313bb (1990 y Supl. 1997). Esta ley, sin embargo, fue derogada por la Ley Núm. 180 de 20 de diciembre de 1997 y sustituida por la Ley Interestatal Uniforme de Alimentos entre Parientes, mientras el caso se encontraba pendiente ante esta Corte.

La cronología de los hechos pertinentes exige determinar, en primer lugar, cuál es la legislación aplicable a la controversia presentada. En segundo lugar, y conforme con la legislación aplicable,

corresponde resolver si un tribunal de Puerto Rico tiene jurisdicción para modificar una orden de pensión alimentaria emitida por un tribunal estatal de Estados Unidos.

I

El 2 de octubre de 1989, Luz C. Aponte y Eliseo Barbosa Dieppa otorgaron una estipulación en la que Barbosa Dieppa se obligó a pagarles a los dos hijos menores de edad procreados con Aponte una pensión alimentaria de cien dólares semanales. En esa misma fecha, un tribunal del estado de Massachussetts dictó una sentencia mediante la cual aprobó la estipulación y ordenó el cumplimiento de sus términos.

El 3 de marzo de 1995, el estado de Massachussetts presentó ante la Administración para el Sustento de Menores de Puerto Rico (ASUME) una solicitud para que se pusiera en vigor la orden dictada el 2 de octubre de 1989[1]. El 23 de junio de 1995, el Procurador Especial de Relaciones de Familia presentó una querella sobre alimentos recíprocos en representación de Aponte y en beneficio de los hijos menores de ésta y Barbosa Dieppa, en el Tribunal de Primera Instancia, Sala Superior de Caguas.

Barbosa Dieppa fue notificado de la querella y citado a una vista a celebrarse el 19 de marzo de 1996. Se le requirió, además, que presentara una Planilla de Información Personal y Económica, a más tardar, cinco días antes de la celebración de la vista. En cumplimiento de este requerimiento, Barbosa Dieppa presentó la mencionada planilla el 11 de marzo de 1996. En ella informó que tenía una hija menor de edad[2] residente en Puerto Rico, además de los dos hijos residentes en Massachussetts, a la cual le enviaba cierta cantidad de dinero.

---

[1] Solicitó, además, que se localizara al patrono de Barbosa Dieppa, se presentara información sobre el salario de este último, se ordenara la retención de ingresos en el origen y se cobraran los atrasos en los pagos de la pensión alimentaria acumulados hasta el 3 de marzo de 1995.

[2] Esta hija fue procreada con Sonia I. Castro.

El 19 de marzo de 1996, se celebró la vista ante la Examinadora de Pensiones Alimenticias. A la vista comparecieron el Fiscal Especial de Relaciones de Familia, en representación de Aponte, y Barbosa Dieppa, por derecho propio. Durante la vista, Barbosa Dieppa anunció que solicitaría una rebaja de la pensión alimentaria. El 25 de marzo siguiente, la Examinadora rindió un informe en el que recomendó el registro en Puerto Rico de la sentencia del tribunal de Massachussetts y el señalamiento de una vista para determinar el pago de la deuda acumulada[3].

El 8 de abril de 1996, Barbosa Dieppa presentó formalmente una moción solicitando la rebaja de la pensión alimentaria. Alegó que su situación económica había empeorado y que tenía una hija más a la cual proveerle alimentos.

El 11 de abril de 1996, el tribunal de instancia dictó una resolución y orden mediante la cual se negó a aprobar el informe presentado por la Examinadora. Concluyó que el estado de Massachussetts no había solicitado que se registrara la sentencia dictada el 2 de octubre de 1989, sino que se ejecutara. El tribunal añadió:

> En algunos estados[]- no luce que Puerto Rico sea uno de ellos - a base de la Ley local,... [el registro] de la sentencia - hacerla local -permitiría que se radi[caran] otras mociones co[r]o[l]arias, i.e. rebaja, relevo, etc. [Si el]... estado inciador [- en este caso, Massachussetts -] no solicit[a]... [el registro] de la sentencia, no la hace local, y priva al estado recurrido [- en este caso, Puerto Rico -], en los casos que su estatuto habilitador[] no lo permit[e],... [de] modificar tal orden. Resolución y orden de 11 de abril de 1996, en la pág. 1.

Consecuentemente, el tribunal de instancia le devolvió el caso a la Examinadora para que, en una nueva vista, llegara a una determinación sobre la solicitud del estado de Massachussetts.

---

[3] La Examinadora recomendó, además, que se le concediera un término a Barbosa Dieppa para que obtuviera representación legal y presentara la moción de rebaja anunciada.

El 22 de octubre de 1996, luego que se celebrara la segunda vista ante la Examinadora[4], el tribunal dictó una sentencia en la que adoptó los términos de la dictada por el tribunal de Massachussetts el 2 de octubre de 1989. Mantuvo la pensión de cien dólares semanales e impuso el pago adicional de cinco dólares semanales para la liquidación de los atrasos acumulados. El tribunal ordenó, además, la retención en el origen de los ingresos de Barbosa Dieppa hasta el máximo permitido por la legislación federal aplicable[5]. En cuanto a la solicitud de rebaja presentada, el tribunal determinó que carecía de jurisdicción para modificar la pensión fijada por el tribunal de Massachussetts. En una resolución y orden adicional, el tribunal fundamentó su determinación en el inciso (e) de la sección 32 de la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, Ley Núm. 71 de 20 de junio de 1956, según enmendada, 32 L.P.R.A. § 3313w(e) (Supl. 1997), derogada por la Ley Núm. 180 de 20 de diciembre de 1997. Concluyó que Barbosa Dieppa tenía que acudir al foro original y presentar allí su solicitud.

Inconforme, Barbosa Dieppa recurió el 20 de diciembre de 1996 ante el Tribunal de Circuito de Apelaciones mediante recurso de certiorari. Alegó que el tribunal de instancia había errado 1) al resolver que no podía registrar la sentencia del tribunal de Massachussetts, 2) al no modificar la pensión alimentaria fijada, y 3) al emitir la orden de retención de ingresos en violación de la "Consumer Credit Protection Act", la Ley Orgánica de la Administración para el de Sustento de Menores y la jurisprudencia aplicable. El 13 de marzo de 1997, el Tribunal de Circuito dictó una sentencia mediante la cual, luego de modificar la orden de retención de ingresos[6], confirmó el dictamen recurrido[7].

---

[4] Esta vista se celebró el 27 de agosto de 1996.

[5] Esta orden fue notificada el 23 de octubre de 1996.

[6] En Tribunal de Circuito resolvió que, de acuerdo con lo dispuesto en la "Consumer Protection Act", 42 U.S.C.A. § 1673(b)(2) (Supl. 1998), la Ley Orgánica de la Administración para el Sustento de Menores, 8

Inconforme con este dictamen, Barbosa Dieppa acudió ante esta Corte mediante recurso de certiorari, el cual expedimos el 13 de junio de 1997.

II

El 20 de diciembre de 1997, la Asamblea Legislativa aprobó la Ley Núm. 180 para adoptar en Puerto Rico la "Uniform Interstate Family Support Act" (UIFSA), bajo el nombre de "Ley Interestatal Uniforme de Alimentos entre Parientes" (LIUAP); enmendar la Ley Orgánica de la Administración de Sustento de Menores y derogar la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos.

La UIFSA fue aprobada en agosto de 1992 por la Conferencia Nacional de Comisionados sobre Leyes Uniformes Estatales ("National Conference of Commissioners on Uniform State Laws") – y ratificada en febrero de 1993 por la American Bar Association –, con el propósito de uniformar la legislación aplicable a los procedimientos de alimentos entre los estados adoptantes[8],[9]. Véanse, Uniform Interstate Family Support Act, 9 U.L.A. nota prologal, en las págs. 273-74 (Supl. 1997); Uniform Interstate Family Support Act (1992), 9 U.L.A. § 901, en la pág. 389 (Supl. 1997). La UIFSA fue una respuesta a legislación federal aprobada entre los años 1975 y 1988, mediante la cual el

---

L.P.R.A. § 523(6) (1996), y lo resuelto en Galarza Rivera v. Mercado Pagán, op. de 19 de diciembre de 1995, 95 J.T.S. 164, en las págs. 415-16, sólo se podía ordenar la retención en el origen del 55% del ingreso neto de Barbosa Dieppa. El tribunal de instancia había ordenado que se retuviera más del 66% del ingreso neto del recurrente.

[7] Barbosa Dieppa solicitó infructuosamente en dos ocasiones la reconsideración de este dictamen.

[8] La UIFSA sustituyó la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, denominada en inglés como "Uniform Reciprocal Enforcement of Support Act" (URESA), según aprobada originalmente en 1950 y enmendada posteriormente en 1952 y 1958, y la Ley Revisada Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos de 1968, denominada en inglés como "Revised Uniform Reciprocal Enforcement of Support Act of 1968" (RURESA). Véase, Uniform Interstate Family Support Act, 9 U.L.A. nota histórica, en la pág. 272 (Supl. 1997).

[9] Para 1997, la UIFSA había sido adoptada en 35 estados y el Distrito de Columbia. Véase, Uniform Interstate Family Support Act (1992), 9 U.L.A. tabla, en la pág. 316 (Supl. 1997).

Congreso les exigió a los gobiernos estatales la adopción de normas y procedimientos sobre el sustento de los menores, como requisito de elegibilidad a ciertos programas de ayuda federal. _Véase_, Uniform Interstate Family Support Act, 9 U.L.A. nota prologal, en la pág. 273 (Supl. 1997). En julio de 1996, la Conferencia Nacional de Comisionados sobre Leyes Uniformes Estatales enmendó la UIFSA con el propósito principal de incorporar guías específicas sobre el procedimiento de retención de ingresos. Esta versión enmendada sustituyó la de 1992. _Véase id.,_ en la pág. 274.

El 22 de agosto de 1996, el Congreso federal aprobó la Ley General de Responsabilidad Personal y Oportunidad de Empleos, denominada en inglés como "Personal Responsibility and Work Opportunity Reconciliation Act of 1996" (PRWORA), cuya sección 321 les exigió a los estados adoptar la UIFSA como requisito para recibir fondos federales para los programas de sustento de menores y asistencia pública para familias necesitadas. _Véase_, P.L. 104-193, § 321, 110 Stat. 2105, 2221 (1996), 42 U.S.C.A. § 666(f) (Supl. 1998)[10]. Para cumplir con este requisito, la Asamblea Legislativa de Puerto Rico adoptó la UIFSA mediante la aprobación de la Ley Núm. 180. Según se consigna en la exposición de motivos de la Ley Núm. 180, "[e]n Puerto Rico, el sesenta y seis por ciento... del presupuesto para la Administración para el Sustento de Menores proviene de fondos federales para asistencia económica a familias necesitadas. La única forma de que el

---

[10] La razón para exigir este requisito, según se expresa en el historial legislativo de la PRWORA fue el siguiente:

> Mandatory passage and use of UIFSA is a cornerstone of a major purpose of the committee proposal--improved child support enforcement in interstate cases. Without uniform laws and procedures governing child support, the success of interstate cases will continue to be severely constrained. Virtually every witness that testified on interstate enforcement before the committee recommended that UIFSA be made mandatory. H.R. No. 104-651, en la pág. 1412 (1996), _reimpreso en_ 1996 U.S.C.C.A.N. 2183, 2471 (énfasis suplido).

procedimiento de reclamaciones de alimentos interestatales sea efectivo es que sea uniforme"[11].

Al adoptar de la UIFSA, pues, Puerto Rico entró en una relación de reciprocidad con los demás estados y territorios adoptantes.

III

A

La LIUAP entró en vigor inmediatamente después de su aprobación el 20 de diciembre de 1997. Véase, Ley Núm. 180 de 20 de diciembre de 1997, art. 2. La sección 904 del artículo 9 de la LIUAP establece:

> El Tribunal General de Justicia será el foro apropiado para los casos interestatales presentados antes del 1ro de julio de 1995 y la Administración para el Sustento de Menores será el foro apropiado para aquellos que surjan a partir de dicha fecha.
>
> Para propósitos de esta Ley, en cualquier acción de alimentos recíprocos presentada con anterioridad al 1ro de julio de 1995, en la cual Puerto Rico actúa como estado recurrido, el Tribunal General de Justicia mantendrá jurisdicción sobre estos casos. El Departamento de Justicia continuará asumiendo la representación legal. El derecho sustantivo y procesal será el que aquí se establece[12]. (Énfasis suplido).

---

[11] La exposición de motivos informa, además, lo siguiente:

> En el informe al Congreso, la Comisión Interestatal de Sustento de Menores de los Estados Unidos... informó que de un treinta... a un cuarenta por ciento... de los casos de pensiones alimentarias son interestatales, con sólo un diez por ciento... de recaudaciones. Esto representa que de un veinte... a un treinta por ciento... de los menores con derecho a alimentos no los están recibiendo.
>
> En Puerto Rico el número de casos interestatales es menor, esto es, 26,000 de 198,000 casos, poco menos del trece por ciento.... Sin embargo, ello no deja de ser un número considerable y un serio problema para los menores que no reciben alimentos. Tan grave es el problema que, generalmente, el trámite de un caso interestatal típico toma entre ocho... a diez... meses, como mínimo, y muchos nunca se resuelven. Los procesos de investigación del padre ausente, la investigación de la capacidad económica, la fijación y la ejecución de la obligación alimentaria en el área de reclamaciones de alimentos interestatales tienen particularidades y problemas que esta Ley propone resolver.

[12] Esta disposición no forma parte del estatuto modelo aprobado por la Conferencia Nacional de Comisiones sobre Leyes Uniformes Estatales. Véase, Uniform Interstate Family Support Act, 9 U.L.A. § 904 (Supl. 1997). Fue añadida por la Asamblea Legislativa de Puerto Rico al adoptarlo.

De acuerdo con esta disposición, la LIUAP constituye el derecho aplicable en todos los casos pendientes, anteriores y posteriores al 1ro de julio de 1995.

El artículo 3 del Código Civil de Puerto Rico preceptúa que "[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario" y, "[e]n ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior". Véase, 31 L.P.R.A. § 3 (1993). Hemos resuelto reiteradamente que esta disposición "sólo tiene el alcance de una regla general de interpretación de estatutos. No es un principio rígido de aplicación absoluta". Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 385 (1973) (citando a Rodríguez v. Miller, 23 D.P.R. 594, 601 (1916)); véase además, Vélez Soto v. Srio. de Justicia, 115 D.P.R. 533, 542 (1984). La sección 904 de la LIUAP dispone claramente su aplicación retroactiva, por lo que la controversia se reduce a determinar si, en este caso, su efecto retroactivo perjudica algún derecho adquirido al amparo de la legislación anterior.

La LIUAP es un estatuto de carácter esencialmente remedial, cuyo propósito es establecer un sistema procesal uniforme para posibilitar la ejecución de una orden de pensión alimentaria de un estado en otro[13], y, como tal, se debe aplicar retroactivamente. Véase, Texas Co. v. Sancho Bonet, 52 D.P.R. 658, 666-67 (1938) (los estatutos relativos a los remedios o procedimientos comienzan a regir retroactivamente); véanse además, Junta de Relaciones del Trabajo de Puerto Rico v. Autoridad de Energía Eléctrica de Puerto Rico, op. del 1ro de abril de 1993, 93 J.T.S. 49, en la pág. 10563; Arbona Hnos. v. Christianson &

---

[13] Véase, Child Support Enforcement Division of Alaska v. Brenckle, 675 N.E.2d 390 (Mass. 1997). En este caso, la Corte Suprema del estado de Massachussetts resolvió que la UIFSA, la cual, según fue adoptada en ese estado, contenía una disposición similar a la sección 904 de la LIUAP, aplicaba retroactivamente a una orden de pensión alimentaria para un menor dictada durante la vigencia de la legislación anterior, en ese caso, la URESA. Según expresó esa corte: "UIFSA... provides the procedural framework for enforcing one State's support order in another jurisdiction. As a remedial statute, and not one affecting substantive rights, it is proper that UIFSA should be applied retroactively". Id., en la pág. 393 (escolio omitido).

Co., 26 D.P.R. 284, 291 (1918); Cintrón v. Banco Territorial y Agrícola, 15 D.P.R. 507, 533 (1909); American Railroad Co. of P.R. v. Hernández, 8 D.P.R. 516, 529 (1905). La legislación vigente en Puerto Rico para el 3 de marzo de 1995, cuando el estado de Massachussetts solicitó la ejecución de su sentencia, eran la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones Alimenticias y la Ley Orgánica de la Administración para el Sustento de Menores, derogada actualmente la primera y enmendada la segunda por la Ley Núm. 180[14]. En virtud de estos estatutos Barbosa Dieppa no adquirió derecho alguno que el efecto retroactivo de la LIUAP pudiera menoscabar. Barbosa Dieppa apenas pudo haber tenido la expectativa de que su solicitud de rebaja fuera resuelta favorablemente conforme con esa legislación. Presumiendo que ello hubiera sido así, esa expectativa habría constituido a lo sumo "una simple esperanza basada en que la ley seguiría en su forma original...". Rodríguez v. Miller, 23 D.P.R. 594, 602 (1916). "[E]sa mera expectativa jamás puede ser considerada como un derecho adquirido...". Id. Véase además, Vázquez v. Morales, 114 D.P.R. 822, 831 (1983). Nada impide, por lo tanto, la aplicación retroactiva de la LIUAP a la controversia objeto del presente recurso.

B

La LIUAP establece un sistema de una sola orden, el cual se apoya en el principio de jurisdicción continua y exclusiva[15] del tribunal que emite una orden de pensión alimentaria o una determinación de filiación, establecido en la sección 205 del artículo 5 – una de las

---

[14] La Ley Orgánica de la Administración para el Sustento de Menores fue enmendada recientemente, además, por la Ley Núm. 169 de 18 de diciembre de 1997.

[15] Este principio deriva esencialmente de la "Parental Kidnapping Prevention Act of 1980", 28 U.S.C.A. § 1738A (1994). Véase, Uniform Family Support Act, 9 U.L.A. § 205 comentario, en la pág. 285 (Supl. 1997).

disposiciones esenciales y más importantes del estatuto[16] –. Según se explica en el comentario del estatuto modelo:

> La mayoría de los procedimientos bajo RURESA eran de novo. Aun cuando una orden existente de un estado era "registrada" en otro estado, el estado registrador sostenía generalmente el derecho de modificar la orden registrada. Esto significaba que múltiples órdenes de pensión alimentaria podían estar vigentes en varios estados. Bajo la UIFSA, el principio de jurisdicción continua y exclusiva pretende, en la medida de lo posible, reconocer que sólo una orden de pensión alimentaria válida puede estar vigente en un momento dado. Este principio se implementa en las Secciones 204 (reglas para la resolución de acciones pendientes en dos o más estados); 205 y 206 (reglas para determinar cuál tribunal tiene jurisdicción continua y exclusiva sobre la orden de pensión alimentaria); 207 (reconciliación con órdenes de pensión alimentaria dictadas antes de la vigencia de la Ley); y 208 (órdenes múltiples para dos o más familias asistidas por el mismo alimentante). Uniform Interstate Family Support Act, 9 U.L.A. nota prologal, en la pág. 275 (Supl. 1997) (traducción nuestra).

De acuerdo con la sección 205, el tribunal que emite una orden de pensión alimentaria en beneficio de un menor retiene jurisdicción continua y exclusiva sobre la orden mientras alguna de las partes – el alimentante, el alimentista o el menor en cuyo beneficio se ha emitido la orden – continúe residiendo en ese estado, y mientras las partes no consientan por escrito a que el tribunal de otro estado modifique la orden y asuma jurisdicción continua y exclusiva[17]. <u>Véase</u>, LIUAP, art.

---

[16] Según el comentario del estatuto modelo, "[t]his section is perhaps the most crucial provision in UIFSA". Uniform Interstate Familiy Support Act, 9 U.L.A. § 205 comentario, en la pág. 285 (Supl. 1997).

[17] La traducción del estatuto adoptada por la Asamblea Legislativa de Puerto Rico es defectuosa en este aspecto. La versión en inglés de la parte pertinente de la sección 205 establece textualmente lo siguiente:

> (a) A tribunal of Puerto Rico issuing a support order consistent with the law of Puerto Rico has continuing, exclusive jurisdiction over a child-support order:
>
> . . . .
>
> (2) <u>until</u> all of the parties who are individuals have filed written consents with the tribunal of Puerto Rico for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction. (Énfasis suplido).

La traducción de esta disposición adoptada por la Asamblea Legislativa de Puerto Rico lee como sigue:

> (a) El tribunal de Puerto Rico que emita una orden de pensión alimentaria para un menor conforme dispone la ley, tiene jurisdicción continua y exclusiva sobre dicha orden:

2, § 205(a)(1), (2). De este principio se infiere, pues, que el tribunal que emite una orden de pensión alimentaria en beneficio de un menor pierde su jurisdicción continua y exclusiva de dos formas: (1) cuando todas las partes han dejado de residir en ese estado, o (2) cuando todas las partes han consentido por escrito a que un tribunal de otro estado modifique la orden y asuma jurisdicción continua y exclusiva. <u>Véase</u>, Uniform Interstate Family Support Act, 9 U.L.A. § 205 comentario, en las págs. 285-86 (Supl. 1997). Los tribunales adoptantes están obligados a reconocer la jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria de acuerdo con la LIUAP, o de una ley sustancialmente similar. <u>Véase</u>, LIUAP, art. 2, § 205(d).

C

Una orden de pensión alimentaria emitida por un tribunal conforme con las disposiciones de la LIUAP se puede ejecutar de tres formas, dos de manera directa y una mediante registro.

De acuerdo con el procedimiento de ejecución directa que establece el artículo 5 de la LIUAP, cuando un tribunal de otro estado ha emitido una orden de retención de ingresos para hacer efectiva una orden de pensión alimentaria, la orden de retención de ingresos emitida en el otro estado "puede ser enviada a la persona o entidad definida como el patrono del alimentante bajo de ley de dicho estado <u>sin tener que</u>

---

. . .

(2) <u>cuando</u> todas las partes hayan prestado su consentimiento por escrito en el tribunal de Puerto Rico para que un tribunal de otro estado modifique la orden y asuma jurisdicción continua y exclusiva. (Énfasis suplido).

La comparación de ambos textos demuestra claramente que donde la versión castellana dice "cuando", se debe leer "hasta", conforme con la sección 905 del artículo 9 de la LIUAP, la cual establece la preeminencia de la versión inglesa en caso de discrepancia entre esta versión y la castellana. <u>Véase, además</u>, Cód. Civil de P.R., art. 13(a), 31 L.P.R.A. § 13(a) (1993).

presanter previamente una petición o reclamación comparable o registrar la orden en el tribunal de Puerto Rico". Sec. 501 (énfasis suplido)[18].

La orden de retención de ingresos también se puede ejecutar directamente, sin intervención judicial previa ni registro, a través de ASUME[19].

---

[18] Esta disposición fue redactada deliberadamente en voz pasiva por la Conferencia Nacional de Comisionados sobre Leyes Uniformes Estatales, para no limitar quién es la persona capacitada para enviar una orden de retención de un estado a otro. Según se explica en el comentario del estatuto modelo: "Aun cuando el remitente será de ordinario una agencia de sustento de menores o el alimentista, el alimentante o cualquier otra persona pudiera suministrarle la orden de retención de ingresos a un patrono". Uniform Interstate Family Support Act, 9 U.L.A. § 501 comentario, en la pág. 299 (Supl. 1997) (traducción nuestra).

[19] Según la sección 507 del artículo 5 de la LIUAP:

(a) La parte que solicita el cumplimiento de una orden de pensión alimentaria o una orden de retención de ingresos, o ambas, emitida por un tribunal de otro estado, podrá enviar los documentos requeridos para el registro de la orden a la Administración para el Sustento de Menores de Puerto Rico.

(b) Una vez recibidos los documentos, la agencia de sustento de menores, [sin necesidad de registrar previamente]... la orden, considerará y[,] si lo estima apropiado, utilizará cualquier procedimiento administrativo autorizado por la ley de Puerto Rico para ejecutar la orden de pensión alimentaria o la orden de retención de ingresos, o ambas. Si el alimentante no objeta la validez o la ejecución de la orden por la vía administrativa,... [la orden no tiene que ser registrada. Si el alimentante objeta la validez o la ejecución de la orden por la vía administrativa,] la agencia de sustento de menores registrará la misma según se dispone en esta ley.

Debido a que la traducción de este inciso es defectuosa, lo hemos citado haciendo las modificaciones pertinentes. Véanse, LIUAP, art. 9, § 905; Cód. Civil de P.R., art. 13(a), 31 L.P.R.A. § 13(a) (1993). El inciso (b) traducido lee textualmente como sigue:

(b) Una vez recibidos los documentos, la agencia de sustento de menores, previo el registro de la orden, considerará y si lo estima apropiado, utilizará cualquier procedimiento administrativo autorizado por la ley de Puerto Rico para ejecutar la orden de pensión alimentaria o la orden de retención de ingresos, o ambas. Si el alimentante no objeta la validez o la ejecución de la orden por la vía administrativa, la agencia de sustento de menores registrará la misma según se dispone en esta ley. LIUAP, art. 5, § 507(b) (énfasis suplido).

Le versión inglesa de esta disposición es la siguiente:

(b) Upon receipt of the documents, the support enforcement agency, without initially seeking to register the order, shall consider and, if appropriate, use any administrative procedure authorized by the law of Puerto Rico to enforce a support order or an income-witholding order, or both. If the obligor does not contest administrative enforcement, the order need not be registered. If the obligor contests the validity of or

La tercera forma de ejecutar una orden de pensión alimentaria de otro estado es registrándola en Puerto Rico. <u>Véase</u>, LIUAP, art. 6, § 601. De acuerdo con el inciso (a) de la sección 603 del artículo 6, "[u]na orden de pensión alimentaria o una orden de retención de ingresos emitida en otro estado se entiende registrada cuando la orden se presenta en el tribunal registrador de Puerto Rico". No obstante, bajo esta sección, el registro de la orden de otro estado en Puerto Rico no implica que se pueda tratar como una orden emitida por un tribunal de Puerto Rico para efectos de modificarla. <u>La orden continúa siendo la orden del estado emisor</u>. <u>Véase</u>, Uniform Interstate Family Support Act, 9 U.L.A. § 603 comentario, en la pág. 304 (Supl. 1997). Consecuentemente, a menos que se cumpla con lo dispuesto en las secciones 609 a la 612, "un tribunal de Puerto Rico reconocerá y ejecutará una orden registrada, <u>pero no podrá modificarla si el tribunal que ha emitido la misma tenía jurisdicción</u>". <u>Id.</u>, § 603(c) (énfasis suplido)[20].

Para que un tribunal pueda modificar la orden de pensión alimentaria para un menor[21] emitida por el tribunal de otro estado, el

---

administrative enforcement of the order, the support enforcement agency shall register the order pursuant to this Act. (Énfasis suplido).

[20] En el comentario del estatuto modelo se explica lo siguiente:

Subsection (c) mandates enforcement of the registered order. This is a sharp variation of RURESA § 40, which stated that 'the registered foreign support order shall be treated in the same manner as a support order issued by a court of this State." This language was generally construed as converting the foreign order into an order of the registering state. Once the registering court concluded that it was enforcing its own order, the next logical step was to modify the order as the court deemed appropriate. This rationale resulted in yet another order in the multiple-order system. <u>UIFSA mandates an end to this process, except as modification is authorized in... article [6]</u>. Uniform Interstate Family Support Act, 9 U.L.A. § 603 comentario, en la pág. 305 (Supl. 1997) (énfasis suplido y citas omitidas).

[21] Se debe señalar que, distinto de cuando se trata de una orden de pensión alimentaria para un menor, un tribunal que no sea el emisor carece de jurisdicción para modificar una orden de pensión alimentaria para un cónyuge o ex cónyuge. El tribunal que emite una orden de pensión alimentaria en beneficio de un cónyuge o ex cónyuge retiene jurisdicción continua y exclusiva sobre la orden mientras subsista la obligación de alimentar. <u>Véanse</u>, LIUAP, art. 2, §§ 205(f), 206(c); Uniform Interstate Family Support Act, 9 U.L.A. § 205 comentario, en la

estado que pretende la modificación tiene que tener jurisdicción personal sobre las partes y cumplir con los requisitos establecidos en el artículo 6 de la ley. <u>Véase</u>, Uniform Interstate Family Support Act, 9 U.L.A. § 205 comentario, en la pág. 286 (Supl. 1997).

La parte o la agencia de sustento de menores que solicita la modificación o la ejecución y la modificación de una orden de pensión alimentaria emitida por el tribunal de otro estado, tiene primero que registrarla en Puerto Rico, si ésta no ha sido registrada ya, siguiendo el procedimiento establecido en las secciones 601 a la 603 de la ley. <u>Véase</u>, LIUAP, § 609. Una vez registrada la orden, los tribunales de Puerto Rico tienen autoridad para ejecutarla como si se tratara de una

---

pág. 286 (Supl. 1997). Según se explica en el comentario de la sección 206 de la UIFSA:

> Spousal support is treated differently; the issuing tribunal retains continuing, exclusive jurisdiction over an order of spousal support throughout the entire existence of the support obligation. Sections 205(f) and 206(c) state that the procedures of UIFSA are not available to a responding tribunal to modify the existing spousal support order from the issuing state.
>
> The prohibition of modification of spousal support by a nonissuing state tribunal under UIFSA is consistent with the principle that a tribunal should apply local law to such cases to insure efficient handling and to minimize choice of law problems. Avoiding conflict of law problems is almost impossible if spousal support orders are subject to modification in a second state. For example, states take widely varying views of the effect of a spousal support order of the obligee's remarriage or cohabitation. Making a distinction between spousal and child support is further justified because the standards for modification of child support and spousal support are very different. In most jurisdictions a dramatic improvement in the obligor's economic circumstances will have little or no relevance in an action seeking upward modification of spousal support, while a similar change in an obligor's situation typically is the primary basis for an increase in child support. This disparity is founded on a policy choice that post–divorce success of an obligor–parent should benefit the obligor's child but not the obligor's ex–spouse.
>
> Finally, UIFSA does not provide for shifting the continuing, exclusive jurisdiction over a spousal–support order by mutual agreement. That procedure is limited to child support under Subsection (a)(2) [of Section 205]. Note that the Act is silent rather than preclusive on the subject. If the parties wish to enter into such an agreement, it is up to the individual states to decide whether to recognize it. A waiver of continuing, exclusive jurisdiction and subsequent modification of spousal support by a tribunal of another state simply is not authorized under the auspices of UIFSA. Uniform Interstate Family Support Act, 9 U.L.A. § 205 comentario, en la pág. 286 (Supl. 1997).

orden emitida por un tribunal de Puerto Rico, <u>pero no para modificarla</u>, salvo que se cumplan los requisitos que establece la sección 611. <u>Véase id.</u>, § 610.

La sección 611 del artículo 6 de la LIUAP establece los siguientes requisitos para que el foro local pueda modificar una orden de pensión alimentaria dictada por un tribunal de otro estado:

(a) Luego de que se registra en Puerto Rico la orden de pensión alimentaria de un menor emitida en otro estado, el tribunal recurrido de Puerto Rico puede modificar dicha orden únicamente en el caso en que la Sección 613 de esta Ley no sea aplicable[,] y luego de cumplir con el requisito de notificación y vista[,] determina que:

(1) los siguientes requisitos se han cumplido:

(i) el menor, el alimentista y el alimentante no residen en el estado que emite la orden;

(ii) el peticionario, quien no es residente de Puerto Rico, solicita que se modifique la orden; y

(iii) el demandado está sujeto a la jurisdicción del tribunal de Puerto Rico; o

(2) el menor o una de las partes está sujeto a la jurisdicción sobre la persona del tribunal de Puerto Rico y todas las partes han presentado por escrito su consentimiento en el estado que emitió la orden para que el tribunal de Puerto Rico pueda modificar la orden de pensión alimentaria y asumir la jurisdicción continua y exclusiva sobre la misma. Sin embargo, si el estado que emite la orden es de una jurisdicción extranjera que no ha aprobado una ley o establecido procedimientos sustancialmente similares a los procedimientos bajo esta Ley, el consentimiento que de otra manera hubiera sido requerido de una persona que resida en Puerto Rico, no se requerirá para que el tribunal asuma jurisdicción para modificar la orden de pensión alimentaria del menor[22].

La sección 613, por su parte, establece lo siguiente en cuanto a la jurisdicción para modificar la orden de pensión alimentaria de un menor emitida por un tribunal de otro estado:

(a) Cuando todas las partes residen en Puerto Rico y el menor no reside en el estado que emitió la orden, un tribunal de Puerto Rico tiene jurisdicción para ejecutar y modificar la orden de pensión alimentaria del estado que la emitió en un procedimiento para registrar dicha orden.

---

[22] El inciso (a) de esta sección es correlativo con el inciso (a) de la sección 205 en cuanto al principio de jurisdicción continua y exclusiva del tribunal que emite la orden. <u>Véase</u>, Uniform Interstate Family Support Act, 9 U.L.A. § 611 comentario, en la pág. 309 (Supl. 1997).

(b) Un tribunal de Puerto Rico ejerciendo su jurisdicción bajo esta Sección deberá aplicar las disposiciones de los Artículo 1 y 2 de esta Ley y este Artículo y la ley procesal y sustantiva de Puerto Rico, al procedimiento para la ejecución o modificación. Los Artículo 3, 4, 5, 7 y 8 de esta Ley no aplican.

D

Para resolver si procede la solicitud de rebaja presentada por Barbosa Dieppa, debemos determinar primero si aplica la sección 613. El inciso (a) de esta sección establece claramente que un tribunal de Puerto Rico tiene jurisdicción para modificar la orden de pensión alimentaria de otro estado, sólo "[c]uando todas las partes residen en Puerto Rico y el menor no reside en el estado que emitió la orden". La actuación del tribunal de Puerto Rico tiene que ocurrir, además, dentro del procedimiento para registrar la orden emitida por el otro estado. Véase id.

Según surge de varios de los documentos en el expediente de este Tribunal, los hijos menores de Barbosa Dieppa, en cuyo beneficio el tribunal de Massachussetts dictó la orden de pensión alimentaria el 2 de octubre de 1989, aún residen en ese estado junto a su madre, la señora Aponte[23]. Barbosa Dieppa, sin embargo, reside en Puerto Rico[24]. Por otro lado, no constan en el expediente los documentos de las partes consintiendo a que el tribunal de Puerto Rico modifique la orden emitida por el tribunal de Massachussetts y asuma la jurisdicción continua y exclusiva sobre ella.

Debido a que el tribunal del estado de Massachussetts aún retiene jurisdicción continua y _exclusiva_ sobre la orden de pensión alimentaria que emitió el 2 de octubre de 1989, en beneficio de los hijos de

---

[23] _Véanse_, Solicitud de certiorari presentada ante el Tribunal Supremo de Puerto Rico el 17 de abril de 1997, en la pág. 6; Solicitud de certiorari presentada ante el Tribunal de Circuito de Apelaciones el 20 de diciembre de 1996, en la pág. 8; Moción solicitando rebaja de pensión alimentaria y memorando de derecho presentada ante el tribunal de primera instancia el 8 de abril de 1996, en la pág. 3; Giro postal enviado a Luz C. Aponte el 10 de febrero de 1996; Declaración jurada de Eliseo Barbosa Dieppa suscrita el 10 de enero de 1995 ante notario.

[24] _Véase, e.g.,_ Declaración jurada de Eliseo Barbosa Dieppa suscrita el 10 de enero de 1995.

Barbosa Dieppa, los tribunales de Puerto Rico carecen de autoridad para modificarla[25]. Para lograr su propósito, Barbosa Dieppa tendría que cumplir con el inciso (2) de la sección 611 del artículo 6 de la LIUAP y lograr que las demás partes prestaran su consentimiento escrito para que un tribunal de Puerto Rico modifique la orden emitida por el tribunal de Massachussetts y asuma jurisdicción continua y exclusiva sobre ella. De lo contrario, tendría que presentar su solicitud ante el tribunal de Massachussetts que emitió la orden.

Esta solución pudiera parecer errónea e injusta. Se podría plantear que la LIUAP dispone los medios para atender la solicitud de Barbosa Dieppa. Se podría argumentar, en primer lugar, que el peticionario tiene una defensa válida frente a la ejecución de la orden dictada por el tribunal de Massachussetts y, en segundo lugar, que es posible remitir el asunto al tribunal de Massachussetts para que éste considere la solicitud de rebaja de la pensión impuesta.

Respecto al primer planteamiento la sección 607 del artículo 6 de la LIUAP establece:

> (a) Una parte que objete la validez o la ejecución de una orden registrada, o que solicita que se deje sin efecto el registro de la misma, tendrá el peso de la prueba de una o más de las siguientes defensas:
>
> . . . .
>
> (5) existe una defensa en derecho bajo alguna ley de Puerto Rico al remedio solicitado. . . .

Esta disposición, sin embargo, no aplica en este caso, ya que Barbosa Dieppa acepta expresamente la validez de la sentencia y la orden dictadas por el tribunal de Massachussetts. Reconoce, además, que durante los procedimientos ante ese foro se le garantizó su derecho a un debido procedimiento de ley. Véase, Solicitud de certiorari, en la pág. 5.

---

[25] Para una conclusión igual a la expresada, véanse los siguientes casos: Office of Child Support Enforcement v. Cook, 959 S.W.2d 763, 764-65 (Ark. App. 1998); Hinton v. Hinton, 496 S.E.2d 409, 411 (N.C. App. 1998).

Pero aun presumiendo que no aceptara su validez, Barbosa Dieppa no tendría defensa alguna contra la ejecución de la orden dictada. El cambio sustancial en la capacidad económica del alimentante, si bien constituye una razón válida que justifica la reducción de una pensión ya fijada, véanse, Valencia, Ex parte, 116 D.P.R. 909, 913 (1986); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 78 (1987); López v. Rodríguez, 121 D.P.R. 23, 32 (1988), no constituye una defensa válida frente a su incumplimiento. Prueba de ello es que, según hemos resuelto, la reducción de una pensión alimentaria, cuando procede, no es efectiva retroactivamente, sino – en ausencia de una situación extraordinaria en la que el alimentante pueda demostrar que por razón de una enfermedad o accidente incapacitante le fue imposible presentar oportunamente la moción correspondiente[26] – a partir de la fecha de radicación de la solicitud. Véanse, Valencia, Ex parte, supra, en la pág. 916; López v. Rodríguez, supra, en las págs. 35-36; Rivera Maldonado v. Cabrera Olivera, op. de 2 de marzo de 1992, 92 J.T.S. 29, en las págs. 9321-22[27].

En cuanto a la posibilidad de remitir el asunto al tribunal de Massachussetts, la sección 206 del artículo 2 de la LIUAP establece:

> (a) El tribunal de Puerto Rico podrá servir como tribunal iniciador para solicitar a un tribunal de otro estado que ejecute o modifique una orden de pensión alimentaria emitida en ese estado.

Esta disposición es un reconocimiento del principio de jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria en beneficio de un menor. Véase, Uniform Interstate Family

---

[26] Barbosa Dieppa nunca ha hecho alegación alguna al respecto.

[27] Cabe señalar, no obstante, que el artículo 19 de la Ley Orgánica de la Administración para el Sustento de Menores, según enmendada por la sección 15 de la Ley Núm. 169 de 18 de diciembre de 1997, establece que "[l]a reducción de la pensión alimentaria será efectiva desde la fecha en que el Tribunal o el Administrador decida sobre la petición de reducción o el Administrador modifique la pensión establecida conforme al reglamento de revisión periódica que se adopte". (Énfasis suplido). La norma establecida en Valencia, Ex parte, supra, en la pág. 916, y reiterada posteriormente en López v. Rodríguez, supra, en las págs. 35-36 y en Rivera Maldonado v. Cabrera Olivera, op. de 2 de marzo de 1992, 92 J.T.S. 29, en las págs. 9321-22, se debe entender modificada a tono con el artículo 19 de la Ley Orgánica de la Administración para el Sustento de Menores, según enmendada.

Support Act, 9 U.L.A. § 206 comentario (Supl. 1997). Si bien nos faculta a solicitarle al tribunal de Massachussetts la modificación de la orden de pensión alimentaria, no nos faculta a no reconocer la vigencia de esa orden en Puerto Rico mientras se dilucida finalmente el asunto[28].

E

La orden de pensión alimentaria en este caso se rige, además, por la "Full Faith and Credit for Child Support Orders Act" (FFCCSOA), 28 U.S.C.A. § 1738B (Supl. 1998)[29],[30]. De acuerdo con las disposiciones de

---

[28] Por otro lado, la sección 306 del artículo 3 de la LIUAP establece que "[s]i una petición o reclamación comparable es recibida por un tribunal sin competencia en Puerto Rico, éste remitirá la petición y los documentos que la acompañan al tribunal apropiado en Puerto Rico o en otro estado y notificará al peticionario el lugar y la fecha en que remitieron los documentos".

No obstante, independientemente de cuál sea el significado preciso de la palabra "competencia" en este contexto – nótese que la versión inglesa de la LIUAP, la cual, según consignamos anteriormente, predomina sobre la castellana, no habla de "venue", sino de "an inappropriate tribunal", véase, Uniform Interstate Family Support Act, 9 U.L.A. § 306 (Supl. 1997) –, el comentario que acompaña la sección 306 de la UIFSA sugiere que el propósito de esta disposición es limitado y específico. El comentario oficial indica lo siguiente:

> This section directs a tribunal receiving UIFSA documents in error to forward the original documents to their proper destination without undue delay, whether the appropriate tribunal is located in the same state or elsewhere. This section is intended to apply both to initiating and responding tribunals receiving such documents. For example, if a tribunal is inappropriately designated as the responding tribunal, it shall forward the petition to the appropriate responding tribunal wherever located, if known, and notify the initiating tribunal of its action. Such a procedure is much to be preferred to returning the documents to the initiating tribunal to begin the process anew.

Uniform Interstate Family Support Act, 9 U.L.A. § 306 comentario (Supl. 1997).

[29] Esta ley fue aprobada el 20 de octubre de 1994.

[30] Algunos de los propósitos que inspiraron la aprobación de la FFCCSOA fueron facilitar la ejecución de las órdenes de pensión alimentaria para menores entre los estados y evitar la competencia jurisdiccional y el conflicto entre las cortes estatales al momento de dictar órdenes de pensión alimentaria para menores. Véase, S. Rep. No. 103-361, en la pág. 4 (1994), reimpreso en 1994 U.S.C.C.A.N. 3259, 3260. Entre las determinaciones que propiciaron la aprobación del estatuto, el Congreso consignó que la falta de uniformidad en la legislación estatal sobre pensiones alimentarias para menores fomentaba que se hiciera caso omiso de las órdenes de pensión alimentaria, ocasionando un cúmulo masivo, a nivel nacional, de atrasos en los pagos, y generaba la excesiva relitigación de los casos y la emisión de órdenes de pensión alimentaria conflictivas por cortes de diversas jurisdicciones, lo cual resultaba en confusión, despilfarro de recursos judiciales, falta de respeto hacia las cortes, y la disminución de la

este estatuto, los tribunales de Puerto Rico carecen de jurisdicción para enmendar la orden emitida por el tribunal de Massachussetts en este caso por la misma razón que no la tienen bajo la LIUAP.

En el historial del proyecto del Senado Núm. 922, el cual se convirtió en la FFCCSOA, se discuten algunos de los problemas relacionados con la falta de cumplimiento con las órdenes de pensión alimentaria de los distintos estados en Estados Unidos. Se consigna que uno de los problemas principales surge cuando el alimentante que no tiene la custodia de los hijos alimentistas se muda a otro estado y solicita allí que se reduzca la cantidad establecida en la orden de pensión alimentaria original. Según se discute en el informe:

> Because child support orders are not entitled to full faith and credit, the courts of the other state can, and frequently do, reduce the amount of support payable under the original court order. This lea[v]es a custodial parent with only two choices. He or she can choose to accept the ruling, and do without the full amount of child support, often at great hardship to the children. Or, he or she can challenge the ruling in the out-of-state court. Assuming the custodial partner learns of the modification in time to appeal, this requires paying money for court costs, attorney's fees, and travel to the new state, all without any guarantee of success. Obviously, neither of these solutions is adequate. S. 922 is designed to remedy that problem.
>
> If a non-custodial parent wishes to file for a reduction in child support payments, then he or she must do so in the state that originally issued the order. This will insure that the custodial parent is given notice of the proposed modification, as well as an opportunity to oppose the modification if he or she wishes. S. Rep. No. 103-361, en las pág. 4-5 (1994), reimpreso en 1994 U.S.C.C.A.N. 3259, 3260-61 (énfasis suplido).

La FFCCSOA le exige a cada estado poner en vigor, de acuerdo con sus términos, una orden pensión alimentaria para un menor dictada en otro estado. Véase, 28 U.S.C.A. § 1738B(a)(1) (Supl. 1998). La ley le prohibe asimismo a los tribunales de un estado modificar una orden de pensión alimentaria para un menor dictada por el tribunal de otro estado, véase id., § (a)(2), salvo de conformidad con las subsecciones (e), (f) e (i). Estas disposiciones establecen:

---

confianza pública en la ley. Véase, FFCCSOA, § 2(a)(C)(E), 108 Stat. 4063-64 (1994).

(e)...    A court of a State may modify a child support order issued by a court of another State if--

(1)  the  court  has  jurisdiction  to  make  such  a child support order pursuant to subsection (i); and

(2)(A)  the  court  of  the  other  State  no  longer  has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's home State or the residence of any individual contestant; or

(B)  each  individual  contestant  has  filed  written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

(f)...  If  1  or  more  child  support  orders  have  been issued with regard to an obligor and a child, a court shall apply  the  following  rules  in  determining  which  order  to recognize for purposes of continuing, exclusive jurisdiction and enforcement:

(1)  If  only  1  court  has  issued  a  child  support order, the order of that court must be recognized.

. . . .

(5)  The  court  that  has  issued  an  order  recognized under  this  subsection  is  the  court  having  continuing, exclusive jurisdiction under subsection (d)[31].

. . . .

(i)...  If  there  is  no  individual  contestant  or  child residing  in  the  issuing  State,  the  party  or  support enforcement agency seeking to modify, or modify and enforce, a  child  support  order  issued  in  another  State  shall  register that  order  in  a  State  with  jurisdiction  over  the  nonmovant for  the  purpose  of  modification.  28  U.S.C.A.  §  1738B(e), (f), (i) (Supl. 1998).

La  solución  del  problema  que  plantea  la  petición  de  rebaja  de

pensión  presentada  por  Barbosa  Dieppa  bajo  estas  disposiciones  es

idéntica  a  la  solución  del  problema  bajo  las  disposiciones  de  la

LIUAP[32]:  debido  a  que  el  tribunal  de  Massachussetts  tiene  aún  la

jurisdicción  continua  y  <u>exclusiva</u>  sobre  la  orden  de  pensión

---

[31] Esta disposición establece: "A court of a State that has made a child  support  order  consistently  with  this  section  has  continuing, exclusive jurisdiction over the order if the State is the child's State or  the  residence  of  any  individual  contestant  unless  the  court  of another State, acting in accordance with subsections (e) and (f), has made  a  modification  of  the  order".  28  U.S.C.A.  §  1738B(d)  (Supl. 1998).

[32] Para  una  discusión  de  una  situación  similar  bajo  la  UIFSA  y  la FFCCSOA,  véase,  Patricia  Wick  Hatamyar,  <u>Critical  Applications  and Proposals  for  Improvement  of  the  Uniform  Interstate  Family  Support  Act and  the  Full  Faith  and  Credit  for  Child  Support  Orders  Act</u>,  71  St. John's L. Rev. 1, 37-38 (1997).

alimentaria, los tribunales de Puerto Rico carecen de jurisdicción para modificarla.

Se podría cuestionar también la corrección de nuestra solución bajo la FFCCSOA. Se podría plantear, en primer lugar, que la FFCCSOA no continúa vigente en jurisdicciones que, como Puerto Rico, han adoptado la UIFSA en cumplimiento del mandato federal preceptuado en la sección 321 de la PRWORA, 42 U.S.C.A. § 666(f) (Supl. 1998). En segundo lugar, se podría argumentar que aun presumiendo la vigencia de la FFCCSOA, ésta contiene disposiciones que permiten atender la solicitud de Barbosa Dieppa.

En cuanto a las posibles inconsistencias entre la FFCCSOA y la UIFSA hay que reconocer efectivamente que ambos estatutos contienen disposiciones que pudieran estar en conflicto. Véase, e.g., Patricia Wick Hatamyar, Critical Applications and Proposals for Improvement of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act, 71 St. John's L. Rev. 1 (1997). No obstante, no nos corresponde resolver esas posibles contradicciones, particularmente cuando, respecto al asunto que nos ocupa, no existe conflicto entre ambos estatutos. Véase id., en las págs. 37-38.

En cuanto a la posibilidad de atender la solicitud de rebaja presentada por Barbosa Dieppa conforme con las disposiciones de la FFCCSOA, cabe señalar que el inciso (h) de ese estatuto ordena la aplicación de la ley del foro a los procedimientos para modificar una orden de pensión alimentaria para un menor. Véase, 28 U.S.C.A. § 1738B(h) (Supl. 1998). No obstante, la ley del foro en este caso es la UIFSA, según adoptada en Puerto Rico – es decir, la LIUAP – y, según hemos explicado, bajo este estatuto, la solicitud de Barbosa Dieppa es improcedente.

Se dictará la sentencia que corresponda de conformidad con los fundamentos expuestos anteriormente.

José A. Andréu García
Juez Presidente
EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luz C. Aponte

    Demandante-Recurrida

       v.                 CC-97-187      Certiorari

Eliseo Barbosa Dieppa

    Demandado-Recurrente

SENTENCIA


San Juan, Puerto Rico, a 24 de julio de 1998


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se confirma la sentencia del Tribunal de Circuito de Apelaciones de 13 de marzo de 1997.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Fuester Berlingeri emitió una Opinión Disidente.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

LUZ C. APONTE

    Demandante-Recurrida

        vs.                   CC-97-187       CERTIORARI

ELISEO BARBOSA DIEPPA

    Demandado-Recurrente

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI

San Juan, Puerto Rico, a 24 de julio de 1998.

El caso de autos presenta una situación realmente singular. Tanto el foro de instancia como el foro apelativo denegaron el remedio solicitado por el peticionario, pero admitieron a la vez que el dictamen que emitían **era claramente injusto**. Se lamentaron ambos tribunales que la legislación aplicable les impidiese resolver a favor del peticionario, por lo que expresaron igualmente que sus respectivos dictámenes les dejaba

> "un amargo sabor en la boca de tener que tomar una determinación...que choca con nuestro sentido de justicia sustancial."

En vista de lo anterior, este Foro **expidió** el recurso del peticionario y **todos** los Jueces que intervinimos estuvimos de acuerdo que era menester examinar si en efecto la legislación en cuestión aparejaba la injusticia aludida. En particular,

resolvimos indagar si cabía alguna interpretación de dicha legislación que permitiese atenuar la supuesta rigidez de ésta y así modificar los anómalos dictámenes de los tribunales de instancia y apelativo.

Como demostraré más adelante, existe claramente un modo razonable de cumplir el propósito que nos motivó a expedir este recurso. Sin embargo, una mayoría de este Tribunal ahora opta por un curso de acción distinto al acordado originalmente, **que perpetúa innecesariamente la injusticia que queríamos conjurar**. La mayoría hace caso omiso de unas disposiciones de ley que preceptúan un resultado muy distinto al que ésta decreta. Sigue una ruta decisoria patentemente estrecha, que considero desacertada en Derecho y singularmente injusta. Por todo ello, disiento. Veamos.

I

En esencia, los hechos pertinentes del caso de autos son los que se narran a continuación.

Mientras trabajaba en Estados Unidos, un obrero asalariado acordó pagarle a los dos (2) hijos que tenía entonces, una pensión alimentaria de $429.00 mensuales. En virtud de ello, el 2 de octubre de 1989, un tribunal de Massachusetts dictó una sentencia por estipulación para fijar así la pensión aludida.

Seis años más tarde, a instancias del estado de Massachusetts, el Procurador de Relaciones de Familia de Puerto Rico presentó una querella judicial contra el peticionario, quien ahora residía en Puerto Rico, por sus atrasos en los pagos de la pensión en cuestión. Este respondió a la querella indicando que su situación económica y familiar **había cambiado sustancialmente**, debido a que actualmente tenía una tercera hija a quien tenía que alimentar también, y debido además a que los ingresos totales con que contaba ahora se habían reducido y sumaban sólo $656.00 mensuales. Solicitó, por lo tanto, que conforme a sus circunstancias actuales, se autorizara una rebaja en la pensión para sus dos hijos en Massachusetts.

La solicitud de rebaja fue referida a la Oficial Examinadora de Pensiones Alimenticias, quien examinó el asunto detenidamente, y conforme las normas pertinentes, determinó que el peticionario sólo tenía medios para pagarle $172.00 mensuales a los hijos que residían en Massachusetts. A pesar de esta determinación, el foro de instancia entendió que la legislación vigente entonces, la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos, en adelante Ley Uniforme de Reciprocidad, **le impedía modificar la pensión** fijada por el tribunal de Massachusetts. Concluyó que para ello, el empobrecido peticionario **tenía que trasladarse a Massachusetts y presentar su solicitud en el foro que fijó la pensión originalmente**. Consecuentemente, el foro de instancia mantuvo en vigor la pensión estipulada en Massachusetts; le impuso al peticionario el pago adicional de $22.00 mensuales para la liquidación de los atrasos acumulados; y le ordenó la correspondiente retención en el origen de los ingresos del peticionario para el pago de la pensión; todo ello **a la vez que reconoció expresamente** que el peticionario no tenía los medios para su propio sostén y el de la tercera hija y para satisfacer también la pensión alimentaria referida.

El Tribunal de Circuito de Apelaciones confirmó esencialmente el dictamen de instancia. Sostuvo que la Ley Uniforme de Reciprocidad requería el dictamen en cuestión.

Fue en este contexto que decidimos expedir el recurso de certiorari solicitado ante nos por el peticionario. Como se ha indicado ya, nos pareció que la carga impuesta al peticionario era obviamente **injusta e irrazonable**.


II

La Ley Uniforme de Reciprocidad, 32 L.P.R.A. secs. 3311 *et seq.*, que estaba en vigor cuando los foros de instancia y apelativo emitieron sus respectivos dictámenes en el caso de autos, fue aprobada por la Asamblea Legislativa de Puerto Rico el 20 de junio de 1956, con el propósito de fortalecer el pago de obligaciones alimentarias en aquellos casos en que

el alimentante residía en Puerto Rico y el alimentista residía en alguno de los estados de la Unión norteamericana, y viceversa.  Se trataba de una **legislación de reciprocidad**, que perseguía hacer uniforme la ejecución de las obligaciones alimentarias entre las jurisdicciones estatales de los Estados Unidos y el Estado Libre Asociado de Puerto Rico.  Robles v. Otero de Ramos, 127 D.P.R. 911 (1991).  Dicha legislación no era otra cosa que la versión local de un proyecto de ley modelo, propuesto por la *National Conference of Commissioners On Uniform State Laws* en 1952, que fue adoptado en cuarenta y siete (47) jurisdicciones estatales norteamericanas.  Véase, 9 *Uniform Laws Annotated* 333 (1988).

Cuando este Tribunal expidió el recurso del peticionario el 13 de junio de 1997, la referida Ley Uniforme de Reciprocidad estaba vigente.  Sin embargo, seis meses después de expedido el recurso, el 20 de diciembre de 1997, la Asamblea Legislativa **derogó** la Ley Uniforme de Reciprocidad y la sustituyó por una nueva Ley Interestatal Uniforme de Alimentos entre Parientes, en adelante L.I.U.A.P., que es la que está vigente al momento en que resolvemos el caso de autos, y, por tanto, la que rige la controversia ante nos, por propio mandato de dicha ley, como bien señala la mayoría en su opinión.

Mediante la L.I.U.A.P. se adoptó en Puerto Rico la *Uniform Interstate Family Support Act* (U.I.F.S.A.), otro proyecto de ley modelo propuesto en 1996 por el *National Conference of Commissioners on Uniform State Laws,* a los fines de mejorar la legislación uniforme interestatal referente al sustento de menores.  La U.I.F.S.A. se formuló con el propósito específico de sustituir estatutos como la Ley Uniforme de Reciprocidad, y así fortalecer los mecanismos para la ejecución interestatal de las obligaciones alimentarias.  La U.I.F.S.A. ya ha sido adoptado por 48 estados y por el Distrito de Columbia.  Véase, Historial de la U.I.F.S.A., 9 U.L.A. 274 (Supl. 1997), y Murphy v. Murphy, 1998 W.L. 262805 (1998).  Por ser la L.I.U.A.P. esencialmente una traducción

del U.I.F.S.A., sus secciones adoptan y reproducen íntegramente el texto de las disposiciones equivalentes en la U.I.F.S.A.

Uno de los rasgos principales de la U.I.F.S.A., y por tanto de la L.I.U.A.P., es que establece la vigencia en la jurisdicción a la que se recurre, de las órdenes judiciales de la jurisdicción que las emitió, aunque **no exista reciprocidad** entre una jurisdicción y la otra. Esta innovación es parte del esquema de la nueva legislación para fortalecer la ejecución de las órdenes alimentarias emitidas por el foro que fijó la pensión originalmente.

Otro rasgo central del nuevo esquema aludido es que se expande significativamente el ámbito de la jurisdicción del tribunal que emitió inicialmente la pensión alimentaria. En efecto, la jurisdicción de dicho foro sobre la pensión alimentaria es continua y exclusiva, **excepto en los casos expresamente dispuestos en la nueva legislación**. Si bien la U.I.F.S.A., como su versión local, la L.I.U.A.P., persiguen reducir a un mínimo las facultades de otros tribunales para **modificar** las pensiones fijadas por el foro que las ordenó originalmente, **tal facultad continúa existiendo en determinadas circunstancias**. En el informe explicativo que acompaña la ley modelo (U.I.F.S.A.) se indica lo anterior, con entera claridad:

> "**Except for narrowly defined fact circumstances**, under U.I.F.S.A. the only tribunal that can modify a support order is the one having continuing, exclusive jurisdiction over the order". (9 U.L.A. pág. 277, Supl. 1997). (Enfasis suplido).

Una de las circunstancias aludidas, cuando por excepción se puede modificar la orden judicial de alimentos original, es la que se establece en la sección 607 del Artículo 6 de la L.I.U.A.P., que dispone así en lo pertinente:

**Sección 607. Objeción al registro o ejecución**

> (a) Una parte que objete la validez o ejecución de una orden registrada, o que solicita que se deje sin efecto el registro de la misma, tendrá el peso de la prueba de una o más de las siguientes defensas:

> [...]

(5) existe una defensa en derecho bajo alguna ley de Puerto Rico al remedio solicitado.

[...]

(B) Si una parte presenta evidencia estableciendo total o parcialmente una defensa bajo la subsección (a), un tribunal podrá paralizar la ejecución de la orden registrada, continuar el procedimiento que le permita la producción adicional de evidencia pertinente y emitir otras órdenes que estime apropiadas. [...]

Como puede observarse, el artículo citado de la L.I.U.A.P. autoriza de modo claro y expreso a los tribunales de Puerto Rico a acceder a una solicitud como la del peticionario en el caso de autos, si tal solicitud procede al amparo del ordenamiento jurídico de Puerto Rico. Es decir, el peticionario puede objetar la ejecución de la orden judicial que originalmente fijó la pensión alimentaria, **si existe en nuestra jurisdicción alguna defensa** que pueda oponerse a la ejecución de dicha orden que procura la jurisdicción que la emitió.

**Es menester señalar que el propio Tribunal Supremo del estado de Massachusetts ha reconocido que bajo la sección 6-607 del U.I.F.S.A., a la que corresponde la disposición antes citada de nuestra L.I.U.A.P., una parte como el peticionario de autos puede tener defensas válidas que oponer a la solicitud de ejecución instada por la jurisdicción que emitió la pensión alimentaria**. Child Support Enforcement Division of Alaska v. Brenckle, 424 Mass. 214, 675 N.E. 2d 390, 221 y 394 (1997).

La cuestión precisa ante nos bajo la L.I.U.A.P., pues, es si existe en nuestro derecho alguna defensa que ampare al peticionario. Pasemos a examinar este asunto, que es la cuestión verdaderamente medular en el caso de autos.

III

Como se sabe, la cuestión de los alimentos entre parientes en Puerto Rico está fundamentalmente regulada por nuestro Código Civil. Respecto a lo que aquí nos concierne, el Artículo 146 de ese Código, 31 L.P.R.A. sec. 565, dispone lo siguiente:

**Cuantía de alimentos**

La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo.

Conforme a lo dispuesto en el artículo referido, es principio general de nuestro ordenamiento jurídico que la cuantía de los alimentos debe ser proporcional al estado de necesidad del alimentista y a la condición económica del alimentante obligado. Guadalupe Viera v. Morell, 115 D.P.R. 4, 14 (1983). En nuestro ordenamiento jurídico, es claro, además, que luego de aprobado un convenio o estipulación sobre pensión alimentaria, éste puede modificarse si ocurre "un cambio sustancial en las circunstancias que dieron lugar u originaron el mismo". Negrón Rivera y Bonilla, Ex parte, supra, 120 D.P.R. 61 (1987). "La jurisprudencia consistentemente ha reconocido la facultad judicial para modificar los decretos judiciales previos sobre pensiones alimenticias según lo requieran los cambios de circunstancias que así lo ameriten". Torres Peralta, La Nueva Ley Especial de Sustento de Menores, 49 Rev. Col. Abogados 115 (1988). Véanse, además, Valencia, Ex parte, 116 D.P.R. 909 (1986); Guadalupe Viera v. Morell, supra. Reiteradamente, hemos resuelto que una resolución o sentencia imponiendo el pago de alimentos siempre está sujeta a ser modificada o reajustada al demostrarse que las condiciones han variado. García v. Acevedo, 78 D.P.R. 611, 617 (1955). Ello es así aún cuando los alimentos hayan sido estipulados. Brea v. Pardo, 113 D.P.R. 217 (1982).

Con arreglo a la sección 607(a)(5) y (b) del Artículo 6 de la nueva L.I.U.A.P., supra, estos principios normativos firmemente arraigados en nuestro Código Civil y en nuestra jurisprudencia no quedan sin efecto en el caso de sentencias foráneas sobre alimentos. Dicha ley se estableció esencialmente para frenar la evasión del cumplimiento de la obligación de proveer alimentos, que ocurre cuando el obligado abandona deliberadamente la jurisdicción que le impuso el pago de alimentos, para evadir dicho

pago. Su objetivo es asegurar que se pongan en vigor en el nuevo lugar de residencia del obligado las órdenes sobre alimentos emitidas en otros estados de la Unión americana. Tal objetivo, sin embargo, no es incompatible con la posibilidad de alterar judicialmente algún dictamen foráneo fijando alimentos, **cuando está ausente el propósito de evadir el pago de la pensión impuesta y se acredita, a satisfacción del tribunal de Puerto Rico, que ha ocurrido cambios sustanciales en las circunstancias del alimentante que le impiden descargar su obligación de alimentar** del modo en que había sido impuesta tal obligación inicialmente.

**Existe, pues, una defensa válida en nuestro ordenamiento jurídico que ampara al peticionario**, que la mayoría no considera de modo alguno en su obturado dictamen.

Es menester resaltar que la L.I.U.A.P. también provee **otro medio** para atender la solicitud de rebaja de pensión del peticionario, que la mayoría tampoco considera de modo alguno, y que serviría para atenuar la severidad del gravoso e injusto dictamen que pesa sobre el peticionario. Dicha ley hace posible que el tribunal de Puerto Rico remita al de Massachusetts el asunto que nos concierne, y que solicite de éste el ajuste que proceda en la pensión que debe pagar el peticionario, conforme a sus circunstancias económicas actuales y al hecho de que tiene otro hijo más que debe alimentar también. Esta alternativa surge claramente de las siguientes disposiciones de la L.I.U.A.P., que la mayoría omite mencionar en su constrictiva opinión:

**Sección 206**

(a) El tribunal de Puerto Rico podrá servir como tribunal iniciador para solicitar a un tribunal de otro estado que ejecute **o modifique** una orden de pensión alimentaria emitida en ese estado. (Enfasis suplido).

**Sección 306. Tribunal sin competencia**

Si una petición o reclamación comparable es recibida por un tribunal sin competencia en Puerto Rico, éste remitirá la petición y los documentos que la acompañan al tribunal apropiado en Puerto Rico **o en otro estado** y notificará al peticionario el lugar y la fecha en que remitieron los documentos. (Enfasis suplido).

Esta alternativa le evitaría al peticionario, que es evidentemente una persona de ingresos limitados, tener que gastar dinero para trasladarse a Massachusetts para presentar allí su solicitud de ajuste en la pensión alimentaria.

En resumen, pues, la L.I.U.A.P. contiene varias disposiciones que ofrecen **alternativas** para atender la razonable solicitud del peticionario de que se le ajuste su pensión alimentaria. Tiene contenido suficiente para que pueda hacerse cierta aquí la visión que expresáramos en <u>Negrón Rivera y Bonilla, Exparte</u>, <u>supra</u>, a la pág. 73, de que "cuando de hacer justicia se trata, especialmente en áreas de gran interés público, no hay moldes técnicos que limiten o aprisionen los remedios justos."

IV

Debe señalarse que tampoco es correcto el pronunciamiento de la mayoría de que la ley federal conocida como F.F.C.C.S.O.A., la Full Faith and Credit for Child Support Orders Act, 28 U.S.C.A. 1738B, también requiere que los tribunales de Puerto Rico denieguen la solicitud del peticionario de que se ajuste su obligación alimentaria a sus circunstancias actuales. Esta postura de la mayoría no es cónsona con el historial ni con el texto de la aludida legislación federal. Aquí, de nuevo, la mayoría hace caso omiso a las razonables aberturas que existen en Derecho para conjurar una patente injusticia como la del caso de autos.

En primer lugar, es muy cuestionable que la F.F.C.C.S.O.A. continúe teniendo vigencia en jurisdicciones como Puerto Rico, que han adoptado ya la U.I.F.S.A. Nótese que la F.F.C.C.S.O.A. fue aprobada por el Congreso en 1994, con el mismo propósito que persigue la U.I.F.S.A.: impedir que mediante el cambio de residencia se deje de pagar una obligación alimentaria; asegurar que una jurisdicción ponga en vigor una orden de pensión para un menor dictada en otro estado. Véase, <u>U.S. Code Congressional And Administrative News</u>, vol. 5, 1994, págs. 3259-3265. Pero resulta que posteriormente, en 1996, el Congreso aprobó **otra**

**legislación sobre este mismo asunto**, que requería que la U.I.F.S.A. fuese adoptada en las jurisdicciones estatales de Estados Unidos a más tardar para el 1 de enero de 1998. 42 U.S.C.A. sec. 666(f). Tratándose de la legislación más reciente sobre un mismo asunto, es evidente que prevalece la legislación del 1996, que es la que requiere la adopción de la U.I.F.S.A. como medio más eficaz de lograr el propósito congresional. En efecto, fue precisamente en virtud del mandato de la referida legislación federal de 1996, que la Asamblea Legislativa de Puerto Rico adoptó la U.I.F.S.A. en diciembre de 1997. Véase, la Exposición de Motivos de la Ley Núm. 80 de 20 de diciembre de 1997.

Nótese, además, que suponer que la F.F.C.C.S.O.A. continua vigente junto con la U.I.F.S.A. daría lugar a un conflicto de mandatos federales. Ello es así porque aun cuando ambas piezas legislativas tienen el mismo propósito, y ambas responden a un mandato congresional, las leyes no son idénticas en su contenido. La U.I.F.S.A. regula el asunto en cuestión de manera más detallada y abarcadora que la F.F.C.C.S.O.A. Por ello, si se pretende que ambas apliquen a la vez, se crearía la insostenible situación de que el foro judicial tenga la obligación de conceder un remedio concreto bajo una ley, y la obligación de conceder otro remedio concreto **distinto** bajo la otra ley. El conflicto aludido sólo puede evitarse reconociendo que prevalece la U.I.F.S.A., que es la que incorpora el mandato congresional más reciente y la que más eficazmente atiende el propósito congresional.

Por otro lado, debe destacarse también que aun en el supuesto de que la F.F.C.C.S.O.A. continúe vigente, dicha ley por sus propios términos contiene disposiciones que permiten atender situaciones como la del caso de autos. El inciso (h) de este estatuto federal expresamente dispone lo siguiente:

    **(h)  Choice of law.–**

    **(1)  In general.–**In a procceeding to establish, modify, or enforce a child support order, the forum State's law shall apply except as provided in paragraphs (2) and (3).

**(2) Law of State of issuance of order.**–In interpreting a child support order including the duration of current payment and other obligations of support, a court shall apply the law of the State of the court that issued the order.

**(3) Period of limitation.**–In an action to enforce arrears under a child support order, a court shall apply the statute of limitation of the forum State or the State of the court that issued the order, whichever statute provides the longer period of limitation. (Enfasis suplido).

Conforme a este inciso, los tribunales de Puerto Rico deben aplicar las normas **de nuestro propio ordenamiento** en procedimientos instados para **poner en vigor** una orden judicial de alimentos, lo que permitiría aplicar en este caso la normativa antes reseñada que se origina en el Artículo 146 del Código Civil de Puerto Rico, supra. Si bien es cierto que dicho inciso también dispone que al **interpretar** la orden de alimentos se ha de seguir la ley del foro que la emitió, ello no altera en nada lo que resultaría de aplicar la normativa puertorriqueña, debido a que el estado de Massachusetts tiene una normativa similar a la nuestra, en lo que se refiere al asunto en cuestión.[33] El resultado sería el mismo bajo cualquiera de los dos regímenes legales.

Debe señalarse que el inciso (h) de la F.F.C.C.S.O.A. aludido ha sido interpretado según lo hacemos aquí, no sólo por juristas que son especialistas en estos asuntos, sino además por otros foros judiciales. Véase, Hatamyar, Critical Applications...of U.I.F.S.A. and F.F.C.C.S.O.A., 71 St. John's L. Rev. 1, 29 (1997); y la jurisprudencia allí citada.

V

En resumen, pues, ni nuestra propia L.I.U.A.P. ni la F.F.C.C.S.O.A. federal constituyen camisas de fuerza que requieran la injusta y absurda

---

[33]Bajo su propio ordenamiento jurídico, Massachusetts reconoce la doctrina de cambios materiales en las circunstancias para justificar una modificación y atenuar el cumplimiento de las obligaciones alimentarias. Véanse, Hamilton v. Pappallardo, 677 N.E. 2d 1176, 677 N.E. 2d 1176 (1997); Buckley v. Buckley, 679 N.E. 2d. 596, 42 Mass. App. Ct. 716 (1997); Keller v. O'Brien, 683 N.E. 2d 1026, 425 Mass. 774 (1997); Cournoyer v. Cournoyer, 663 N.E. 2d 863 (Mass. App. Ct. 1996); Heins v. Ledis, 664 N.E. 2d 10 (Mass. 1996); Buchanan v. Buchanan, 231 N.E. 2d 570, 353 Mass. 351 (1967).

decisión de que el peticionario pague una pensión que está más allá de sus medios económicos.  Dichos estatutos no se legislaron para atender situaciones como la del caso de autos, **que no presenta el móvil de evasión de responsabilidad por medio de un cambio de residencia**.  La situación del caso de autos no constituye de modo alguno el mal que se pretende conjurar a través de las leyes referidas. Por el contrario, este caso presenta más bien una circunstancia de excepción, derivada de la equidad, que ha sido reconocida jurídicamente tanto de manera general[34], como del modo concreto que lo hace el Artículo 146 del Código Civil antes mencionado.  Además, como se ha demostrado ya, las leyes referidas pueden interpretarse razonablemente, conforme a conocidos principios de hermenéutica, para atender el reclamo del peticionario.  La mayoría en efecto hace caso omiso de las disposiciones de las leyes aludidas, discutidas antes en esta opinión, que podrían interpretarse para hacerle justicia al peticionario.  Para enfrentar la justificada crítica que se le hace aquí, la mayoría menciona en su opinión las disposiciones aludidas muy de pasada y ofrece una interpretación superficial y enrevesada de ellas.  No hay un intento serio de examinar dichas disposiciones cabalmente, para ver si pueden aplicarse a este caso de modo tal que pueda evitarse la patente injusticia que representa que el peticionario continúe sometido a una obligación alimenticia que se le hace imposible pagar.

La mayoría, pues, rehusa entender que el caso de autos presenta una ocasión propicia para aplicar aquí la profunda

---

[34]Véase, Puig Brutau, Fundamentos de Derecho Civil, Tomo I, Vol. II, págs. 364–365 (1985); Rivera v. Caribbean Home Const. Corp., 100 D.P.R. 106 (1971).

concepción de lo que es un ordenamiento jurídico, que expresáramos en Passalacqua v. Mun. de San Juan, 116 D.P.R. 618, 632 (1985):

> "Tenemos el deber de hacer que el Derecho sirva propósitos útiles sociales, no esquemas teóricos abstractos que arrojan resultados prácticos absurdos."

Con su dictamen, la mayoría da un lamentable ejemplo de lo que tanto se ha criticado respecto al estrecho positivismo que a veces ha sido característica deplorable de la labor judicial. La mayoría se niega aquí a elevar sus miras más allá de lo pedestre; se niega a utilizar la inventiva jurídica para encontrar una solución justa a un problema de excepción. Ni siquiera explica la mayoría a qué fines o propósitos de interés público responde el duro dictamen que decreta en este caso particular. No es ésta ciertamente una ocasión en la cual el proceso judicial ha ostentado sus mejores galas.

En el caso de autos, el peticionario no buscaba evadir el pago de la pensión alimentaria que le fue impuesta en Massachusetts. Por el contrario, trataba de pagarla de conformidad con su capacidad económica actual. Era evidente la inhabilidad del alimentante de satisfacer con sus ingresos presentes la obligación alimentaria que le fue impuesta originalmente. Conforme a la interpretación propuesta del derecho aplicable, nuestros tribunales pueden considerar la moción de rebaja de pensión presentada por el peticionario. Resolver lo contrario constituye declarar el fracaso de nuestro sistema de administración de la justicia; y darle validez a la mordaz crítica de algunos de que "the Law is an ass".[35] Como yo no comparto esa baja concepción del Derecho, disiento.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

---

[35] "If the Law supposes that, said Mr. Bumble... the Law is an ass- a idiot." Dickens, Oliver Twist.